# United States Court of Appeals for the Federal Circuit

---

**ROBERT J. LABONTE, JR.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-1432

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-01784-RAH, Judge Richard A. Hertling.

---

Decided: August 12, 2022

---

ALEXANDER FISCHER, JOSHUA HERMAN, Veterans Legal Services Clinic, Jerome N. Frank Legal Services Organization, Yale Law School, New Haven, CT, argued for plaintiff-appellant Robert J. Labonte, Jr.  Also represented by LERNIK BEGIAN, CASEY SMITH, MICHAEL JOEL WISHNIE.

RICHARD PAUL SCHROEDER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., DOUGLAS K. MICKLE.

JULIE VEROFF, Cooley LLP, San Francisco, CA, for

amici curiae John Brooker, Eleanor Morales, Brian D. Schenk, Eugene R. Fidell, Hugh McClean, Raymond Jewell Toney.  Also represented by KATHLEEN R. HARTNETT.

LIAM JAMES MONTGOMERY, Williams & Connolly LLP, Washington, DC, for amici curiae National Veterans Legal Services Program, Protect Our Defenders.  Also represented by AMY MCKINLAY, MIRANDA PETERSEN.

————————————

Before CHEN, SCHALL, and STOLL, *Circuit Judges.*

SCHALL, *Circuit Judge.*

Appellant, Robert J. LaBonte, Jr., is a veteran who served in the United States Army.  In 2006, he went absent without leave ("AWOL") for six months.  After he voluntarily returned to his base, he pleaded guilty to a charge of desertion in a court-martial proceeding and was separated from the Army with a Bad Conduct Discharge.

In 2015, Mr. LaBonte applied to the Army Board for Correction of Military Records ("ABCMR" or "Board"), seeking retroactive medical retirement.  He alleged that, while in the Army, he had had a permanent disability resulting from post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), depression, and anxiety incurred during service.  He also alleged that these disabilities had rendered him unfit for service prior to his absence without leave, his court-martial, and his discharge.  In 2018, the Board denied his claim.

Mr. LaBonte then filed suit in the United States Court of Federal Claims challenging the ABCMR decision.  On December 3, 2019, the court remanded the case to the Board for further proceedings.  *LaBonte v. United States*, No. 18-1784C (Fed. Cl. Dec. 3, 2019), J.A. 2716.  On April 29, 2020, on remand, the Board again denied Mr. LaBonte's claim for disability retirement.  J.A. 2763–65.  Subsequently, with the case back before the Court of Federal

Claims, Mr. LaBonte challenged the ABCMR's April 2020 decision and moved for judgment on the administrative record. The government renewed a previous motion to dismiss for failure to state a claim upon which relief could be granted and, in addition, cross-moved for judgment on the administrative record.

On October 30, 2020, the Court of Federal Claims granted the government's motion to dismiss. *LaBonte v. United States*, 150 Fed. Cl. 552, 564–65 (2020). The court determined that, in order for the ABCMR to grant Mr. La-Bonte disability retirement, the Board would have to correct Mr. LaBonte's DD-214 Form ("DD-214") to show that he was separated due to physical disability rather than due to a court-martial conviction. *Id.* at 561–62.[1] Concluding that a statute, 10 U.S.C. § 1552(f), prohibited the Board from correcting Mr. LaBonte's DD-214 in this manner, the court held that the Board was without authority to grant Mr. LaBonte the relief he was seeking. *Id.* at 562–64. Pursuant to RCFC 12(b)(6), it therefore dismissed Mr. La-Bonte's claim for failure to state a claim upon which relief could be granted, without reaching the merits of his challenge to the Board's decision. *Id.* at 564–65.

Mr. LaBonte now appeals the Court of Federal Claims' dismissal of his complaint. For the reasons set forth below, we hold that the Court of Federal Claims erred in holding that the ABCMR lacked authority to grant the relief

---

[1]    The DD-214 is titled "Certificate of Release or Discharge from Active Duty." J.A. 754. A DD-214 provides "an accurate and complete summation of active military personnel service" and serves as "an authoritative source of personnel information for administrative purposes, and for making enlistment or reenlistment eligibility determinations." Department of Defense Instruction ("DoDI") 1336.01 ¶ 4(a) (Aug. 20, 2009); *see LaBonte*, 150 Fed. Cl. at 559 n.4.

Mr. LaBonte is seeking. The court therefore erred in dismissing his complaint for failure to state a claim upon which relief could be granted. Accordingly, we reverse the court's decision and remand the case to the court for consideration of the merits of Mr. LaBonte's challenge to the April 2020 decision of the Board.

## BACKGROUND

### I

The pertinent facts are set forth in the decision of the Court of Federal Claims.[2]

Mr. LaBonte enlisted in the Army in 2002. *LaBonte*, 150 Fed. Cl. at 555. In 2004, he was deployed in Iraq. During that deployment, he sustained injuries when he fell from a 30-foot guard tower. After returning from Iraq, Mr. LaBonte sought help from his chain of command and from the Fort Hood Mental Health Clinic for symptoms of mental distress, anxiety, disrupted sleep, and panic attacks. An intake specialist at the Mental Health Clinic documented his symptoms and diagnosed him with an adjustment disorder. *Id.*

In 2004, shortly after his visit to the Mental Health Clinic, Mr. LaBonte learned that he was scheduled to

---

[2]    In ruling on the government's motion to dismiss, the Court of Federal Claims properly assumed the truth of the facts alleged in Mr. LaBonte's complaint. *LaBonte*, 150 Fed. Cl. at 555 n.1; *see Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017) (explaining that, when deciding whether a motion to dismiss for failure to state a claim should be granted, the court "must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant" (citing *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014))).

deploy again to Iraq.  Upon learning this, he informed his chain of command that he was not mentally prepared to return to Iraq, and eventually he went AWOL for six months.  In 2006, Mr. LaBonte voluntarily returned to Fort Hood.  Subsequently, he pleaded guilty to a charge of desertion in a court-martial proceeding and was separated from the Army with a Bad Conduct Discharge.  *Id.*

In 2012, Mr. LaBonte sought treatment from a clinical psychologist, who diagnosed him with PTSD stemming from his combat service in Iraq.  In 2014, Mr. LaBonte was evaluated by a psychiatrist who also diagnosed him with service-connected PTSD.  *Id.*

In 2014, the U.S. Department of Veterans Affairs ("VA") concluded that Mr. LaBonte was eligible for VA benefits for service-connected PTSD, TBI, depression, headaches, back pain, tinnitus, a painful scar, and ulcers.  *Id.* And subsequently, in 2016, Mr. LaBonte received a 100% service-connected disability rating from the VA.  *Id.* at 556.

## II

Following his PTSD diagnosis, Mr. LaBonte sought formal review of his service history and post-discharge benefits.[3]  In 2014, the Army Discharge Review Board ("ADRB") upgraded the characterization of Mr. LaBonte's discharge. *LaBonte*, 150 Fed. Cl. at 556.  The ADRB stated:

> [I]n light of the clear evidence of PTSD, a [Bad Conduct Discharge] in retrospect is too harsh.  If the applicant had a firm diagnosis of PTSD and indication of TBI, this would have been mitigating at his trial, [which] in turn would have led to a more lenient sentence.

---

[3]    In our discussion of the procedural history of the case, we cite to relevant portions of the record in addition to the decision of the Court of Federal Claims.

> . . . This recommendation is made after full consid-
> eration of all of the applicant's faithful and honor-
> able service, as well as the record of misconduct.
> The evidence in this case supports a conclusion
> that the applicant's characterization of service may
> now be too harsh and as a result inequitable.

J.A. 1839. The upgrade was reflected on Mr. LaBonte's DD-214, where Block 24, Character of Service, was changed from "BAD CONDUCT" to "GENERAL, UNDER HONORABLE CONDITIONS." J.A. 754. Relevant to this appeal, the ADRB declined to change the reason for Mr. LaBonte's discharge, which was his 2006 court-martial. *See* J.A. 754, 1833, 1840.

In 2015, having secured the upgrade of his discharge from the ADRB, Mr. LaBonte applied to the ABCMR for retroactive medical retirement. *LaBonte*, 150 Fed. Cl. at 556.[4] Before the Board, Mr. LaBonte alleged that he had a permanent disability for PTSD, TBI, depression, and anxiety incurred during service. He argued to the Board that his disability caused him to be unfit for service prior to his absence without leave, his court-martial, and his discharge. *Id.*[5] On October 19, 2017, the ABCMR denied Mr.

---

[4] A service member who is physically disabled during service is eligible to apply for military disability retirement under 10 U.S.C. § 1201. *See Jones v. United States*, 30 F.4th 1094, 1097 (Fed. Cir. 2022). Where a service member has not been considered or has been rejected for disability retirement prior to leaving active service, the service member can pursue disability retirement before a correction board. *Chambers v. United States*, 417 F.3d 1218, 1225 (Fed. Cir. 2005) (citing *Friedman v. United States*, 310 F.2d 381, 392, 396 (Ct. Cl. 1962)).

[5] Mr. LaBonte's application for correction sought retirement pay from no later than June 30, 2004, the date he sought help at the Fort Hood Mental Health Clinic, to

LaBonte's application for medical retirement.  The Board stated:

> [B]ased on the available post-service medical evidence, it could be argued the applicant met the criteria for referral to the [disability evaluation system for possible medical retirement] prior to going AWOL.    However, in accordance with [10 U.S.C. §] 1552, the ABCMR is not empowered to set aside a conviction.  As such, and since his discharge resulted from his court-martial conviction, he is ineligible for processing through the [disability evaluation system] for possible medical retirement.

ABCMR, No. AR20160000403 (Oct. 19, 2017), https://boards.law.af.mil/ARMY/BCMR/CY2016/20160000 403.txt, J.A. 162; *see also LaBonte*, 150 Fed. Cl. at 556.  The Board concluded that there was "no basis to amend [Mr. LaBonte's] DD Form 214 by changing the reason and authority for separation."  J.A. 162.[6]

The ABCMR's decision was reviewed by Deputy Assistant Secretary of the Army Francine Blackmon.  Secretary Blackmon found that "there [wa]s sufficient evidence to grant additional relief."  *LaBonte*, 150 Fed. Cl. at 556 (alteration in original) (quoting J.A. 198).  Accordingly, she directed the Office of the Surgeon General to determine if Mr. LaBonte "should have been retired or discharged by

---

November 20, 2012, the date he submitted an informal claim for VA benefits.  J.A. 294.

[6]    Block 28 of Mr. LaBonte's DD-214 reflects the "Narrative Reason for Separation" as "COURT-MARTIAL, OTHER."  J.A. 754.  Block 26 provides the corresponding "Separation Code" of "JJD."  *Id.*; *see* Br. for Nat'l Veterans Legal Servs. Program 6.

reason of physical disability through the [disability evaluation system]." *Id.* (quoting J.A. 198).

In response to Secretary Blackmon's directive, two Army physicians conducted an evaluation of Mr. LaBonte as part of a Medical Evaluation Board ("MEB").[7] *LaBonte*, 150 Fed. Cl. at 556. The physicians sought to determine whether processing through the disability evaluation system was warranted at the time of Mr. LaBonte's separation. The physicians concluded that Mr. LaBonte failed to meet medical-retention standards in 2003 because of his PTSD, generalized anxiety disorder, and major depressive disorder, and in 2004 because of his TBI. They found it "unlikely that any further interventions for these conditions would have returned the service member to duties consistent with [his] rank and [Military Occupation Specialty]." *Id.* at 556 (second alteration in original) (quoting J.A. 178).

Following the review by the two MEB physicians, Dr. Eric Doane, a Senior MEB physician, issued a medical advisory opinion, reviewing Mr. LaBonte's medical records for the ABCMR. *Id.* He found that, at the time of

---

[7]    Mr. LaBonte asserts that he was evaluated by military physicians through the Army's Legacy Disability Evaluation System, which is the proper disability evaluation system for Army Veterans referred by the ABCMR. Compl., *LaBonte v. United States*, No. 18-1784C (Fed. Cl. Nov. 20, 2018), ECF No. 1, at 14–15 n.2. Under that system, an MEB determines if a service member met medical retention requirements at the time of separation. If the MEB finds the service member did not meet the military's standards for retention, the MEB will recommend referral of the service member to a Physical Evaluation Board ("PEB"). The PEB determines the service member's past fitness for duty and eligibility for benefits. *See generally* Army Regulation ("AR") 635-40.

Mr. LaBonte's separation in 2006, there were no indications of disabling PTSD and no symptoms of TBI. Dr. Doane concluded that Mr. LaBonte was not in need of disability processing at the time of his separation from the Army. The Board, on June 21, 2018, adopted Dr. Doane's opinion in full as the basis for its denial of Mr. LaBonte's claim. *Id.*; *see* J.A. 188.

## III

On November 20, 2018, Mr. LaBonte filed suit in the Court of Federal Claims, alleging that the denial of his claim was arbitrary and capricious, in bad faith, unsupported by substantial evidence, and a violation of the due process clause of the Fifth Amendment. *LaBonte*, 150 Fed. Cl. at 556.

After briefing and oral argument, the court held that it had jurisdiction under the Tucker Act over Mr. LaBonte's claim for medical retirement. *Id.* at 556–57. It then vacated the ABCMR's decision to deny Mr. LaBonte's claim as contrary to law because the Board had relied on a medical opinion—the Doane opinion—"that failed to consider medical evidence as required by 10 U.S.C. § 1552(h)(2)(B)." *Id.* at 557 (quoting J.A. 2716).[8]  As a result, the court remanded the case to the Board to "obtain a further medical opinion that considers the medical evidence as required by

---

[8]  Paragraph (h) of 10 U.S.C. § 1552 pertains to a claim by a former member of the armed forces for review, by a correction board, of a discharge, based on matters relating to PTSD or TBI. In such a case, the correction board reviews the claim "with liberal consideration to the claimant that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the claimant's discharge or dismissal." 10 U.S.C. § 1552(h)(2)(B).

law and thereafter resolve [the] plaintiff's claim." *Id.* (quoting J.A. 2716).

On remand, on April 29, 2020, the ABCMR again denied Mr. LaBonte's request for disability retirement. *Id.* Pursuant to the remand order, the Board obtained a medical advisory opinion from the Office of the Surgeon General. In her advisory opinion, Dr. Denise M. Richardson stated that there is "a dearth of medical records available during [Mr. LaBonte's] time in service." *Id.* (quoting J.A. 2787). "Therefore," she concluded, "there is no evidence to support the need for disability processing prior to his discharge." J.A. 2787; *see also LaBonte*, 150 Fed. Cl. at 557. In rejecting Mr. LaBonte's claim for disability retirement, the Board stated in pertinent part as follows:

> The Board, while noting that the applicant was ineligible for referral into the Disability Evaluation System . . . prior to service separation because . . . he was charged with an offense under the Uniform Code of Military Justice . . . that could, and did, result in a punitive discharge, considered whether the applicant failed medical retention standards and was unfit prior to service separation in light of the previous upgrade of the discharge to general (under honorable conditions). . . . The Board determined that a preponderance of the evidence does not support a finding that the applicant failed medical retention standards or had any unfitting conditions, to include PTSD and TBI, warranting a disability separation/retirement prior to service separation.

J.A. 2763; *LaBonte*, 150 Fed. Cl. at 557.

## IV

### A

Following the ABCMR's remand decision and the return of the case to the Court of Federal Claims, the

government renewed its motion to dismiss for failure to state a claim upon which relief could be granted and, in the alternative, moved for judgment on the administrative record. *LaBonte*, 150 Fed. Cl. at 557. Mr. LaBonte responded in opposition and also moved for judgment on the administrative record. *Id.*

As noted above, on October 30, 2020, the Court of Federal Claims granted the government's motion to dismiss. The court first affirmed that Mr. LaBonte's disability retirement claims came within the court's jurisdiction under the Tucker Act. *Id.* at 557–58. In that regard, the court determined that the statute governing military retirement for disability, 10 U.S.C. § 1201, is a money-mandating statute because "when the requirements of the statute are met—i.e., when the Secretary determines that a service member is unfit for duty because of a physical disability, and that disability is permanent and stable and is not the result of the member's intentional misconduct or willful neglect—the member is entitled to compensation." *Id.* at 557 (quoting *Fisher v. United States*, 402 F.3d 1167, 1175 (Fed. Cir. 2005)). Next, the court held that Mr. LaBonte's suit was timely filed within six years of the ABCMR's October 20, 2017 decision, as required by 28 U.S.C. § 2501. *Id.* at 559. On appeal, the government does not challenge either the court's ruling with respect to the Tucker Act or the statute of limitations.

B

The Court of Federal Claims turned next to the merits of the government's motion to dismiss for failure to state a claim. In that regard, the government made two arguments. First, it contended that Mr. LaBonte was not eligible for disability processing under AR 635-40.[9] Second, it

---

[9] As the court noted, AR 635-40 has changed since the time relevant to this case, but the parties accept the

argued that, in order to grant Mr. LaBonte the relief he was seeking, the ABCMR would have to correct his DD-214. The government argued, though, that the Board was without authority under 10 U.S.C. § 1552(f) to correct Mr. LaBonte's DD-214. Although § 1552(a) authorizes correction boards to grant disability retirement, the government urged that the statute could not be relied upon for that purpose in Mr. LaBonte's case because § 1552(f) bars correction boards from making such a correction to records that note court-martial proceedings. The government urged that Mr. LaBonte's DD-214 was such a record.

## C

Turning to the government's first argument, the court noted that, at the time relevant to Mr. LaBonte's claim, ¶ 4-1 of AR 635-40 limited eligibility for disability retirement in the case of a service member charged with an offense:

> 4-1. Soldiers charged with an offense
>
> *a. Uniform Code of Military Justice action.* The case of a Soldier charged with an offense under the Uniform Code of Military Justice (UCMJ) or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge, may not be referred for, or continue, disability processing unless—
>
> > (1) The investigation ends without charges.
> >
> > (2) The officer exercising proper court-martial jurisdiction dismisses the charges.

---

applicability of the version of the regulation in effect at the time of Mr. LaBonte's court-martial in 2006. *LaBonte*, 150 Fed. Cl. at 560 (citing AR 635-40 (Feb. 8, 2006)) & n.5.

(3) The officer exercising proper court-mar-
tial jurisdiction refers the charge for trial
to a court-martial that cannot adjudge such
a sentence.

AR 635-40 ¶ 4-1; *LaBonte*, 150 Fed. Cl. at 560. Paragraph
4-2 of AR 635-40 provided that a soldier "may not be re-
ferred for, or continue, disability processing if under sen-
tence of dismissal or punitive discharge."

The Court of Federal Claims rejected the government's
argument that Mr. LaBonte was not eligible for disability
processing under AR 635-40. *LaBonte*, 150 Fed. Cl. at 560–
61. The court reasoned that, although Mr. LaBonte was
separated by court-martial, his punitive discharge—Bad
Conduct Discharge—was, in view of the 2014 action of the
ADRB, no longer reflected on his DD-214. *Id.* at 561. "The
punitive discharge limitation in paragraph 4-2," the court
stated, "therefore does not apply to the plaintiff because he
is no longer 'under' a punitive discharge." *Id.* Since
Mr. LaBonte was not currently facing charges or undergo-
ing a court-martial, and since he had received clemency
from the ADRB, the court determined that he was no
longer subject to a punitive discharge. *Id.* "Therefore," the
court concluded, "by its own terms, Army Regulation 635-
40, in effect at the time of [Mr. LaBonte's] discharge, does
not preclude [him] from disability-retirement processing."
*Id.* On appeal, the government does not take issue with
the court's ruling regarding AR 635-40.

D

Having disposed of the government's first argument,
the Court of Federal Claims proceeded to address the gov-
ernment's contention that the ABCMR was without au-
thority to correct Mr. LaBonte's records to grant him
disability retirement.

Pursuant to 10 U.S.C. § 1552(a)(1), "[t]he Secretary of
a military department may correct any military record of

the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." However, as the Court of Federal Claims noted, *LaBonte*, 150 Fed. Cl. at 561 & n.6, under 10 U.S.C. § 1552(f), when the correction involves "records of courts-martial and related administrative records pertaining to court-martial cases," the authority to correct a record is limited to "(1) correction of a record to reflect actions taken by reviewing authorities" under the UCMJ, or "(2) action on the sentence of a court-martial for purposes of clemency."[10]

As noted above, the government took the position that, in order to grant Mr. LaBonte disability retirement, it would be necessary to change his military records to reflect that he was medically separated. Def.'s Renewed Mot. to Dismiss and, In the Alternative, Cross-Mot. for J. on the Admin. R., and Opp'n to Pl.'s Mot., *LaBonte v. United States*, No. 18-1784C (Fed. Cl. Aug. 19, 2020), ECF No. 74, at 27–29. One example of a military record that would need to be changed, the government argued, was

---

[10]    Section 1552(f) provides in full:

(f) With respect to records of courts-martial and related administrative records pertaining to court-martial cases tried or reviewed under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)), action under subsection (a) may extend only to—

(1) correction of a record to reflect actions taken by reviewing authorities under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)); or

(2) action on the sentence of a court-martial for purposes of clemency.

Mr. LaBonte's DD-214. Specifically, the government contended that "[t]o place Mr. LaBonte in retirement processing, at the very least, the narrative reason for separation on his DD-214 Form would need to be changed from 'court-martial' to reflect medical retirement." *Id.* at 29. According to the government, however, this change could not be made because Mr. LaBonte's DD-214 was a "related administrative record" under 10 U.S.C. § 1552(f). *Id.* Mr. LaBonte responded with two arguments: *first*, that no statute or regulation prevented his records from reflecting both a court-martial conviction and medical retirement status; and *second*, that to the extent retirement processing requires that his DD-214 be altered, § 1552(f) did not bar the correction. Pl.'s Reply in Supp. of his Mot. for J. on the Admin. R., Resp. in Opp. To Def.'s Cross-Mot., and Resp. to Def.'s Mot. to Dismiss, *LaBonte v. United States*, No. 18-1784C (Fed. Cl. Sept. 23, 2020), ECF No. 82, 7–11; *LaBonte*, 150 Fed. Cl. at 561–62.

The Court of Federal Claims began its analysis by determining that, in order to grant Mr. LaBonte disability retirement, it would be necessary for the Board to correct his DD-214. The court arrived at this conclusion based upon the following reasoning:

> Although Secretary Blackmon subsequently determined that the evidence supported the plaintiff's request for relief, the Board's original decision in 2017 informs this discussion. The Board found that the plaintiff had requested "in effect" a correction of his DD-214 to show that "he was retired due to physical disability." The Board concluded that because the plaintiff's court-martial made him ineligible for disability processing, there was "no basis to amend [his] DD Form 214 by changing the reason and authority for separation." The Board itself therefore has answered the question; it would need to correct the plaintiff's DD-214 in order to grant the relief the plaintiff seeks.

*LaBonte*, 150 Fed. Cl. at 562 (alteration in original) (first quoting Admin. R. 86, then quoting Admin. R. 115 (J.A. 162)).

Having determined that granting Mr. LaBonte the relief he sought required changing his DD-214, the court turned to the government's argument that 10 U.S.C. § 1552(f) barred correction of Mr. LaBonte's DD-214 because the form is an "administrative record" that is "related" to his court-martial. *Id.* Addressing that argument, the court first considered 10 U.S.C. § 801(14), which defines the term "record," when used in connection with the proceedings of a court-martial. It states:

> (14) The term "record", when used in connection with the proceedings of a court-martial, means—
>
> > (A) an official written transcript, written summary, or other writing relating to the proceedings; or
> >
> > (B) an official audiotape, videotape, or similar material from which sound, or sound and visual images, depicting the proceedings may be reproduced.

The court concluded that, although Mr. LaBonte's DD-214 noted his court-martial, it was not covered by any of the terms mentioned in § 801(14). *LaBonte*, 150 Fed. Cl. at 562. Hence, the court determined, it was not a record of a court-martial under § 1552(f). *Id.* Next, the court considered dictionary definitions for the word "related."[11]  The

---

[11]    The court relied on definitions from two dictionaries. *Related*, *Oxford English Dictionary* (3d ed. 2009) ("Connected or having relation to something else."); *Related*, *Black's Law Dictionary* (11th ed. 2019) ("Connected in some way; having relationship to or with something else.").

court reasoned that, because § 1552(f)'s "records of courts-martial" already encompasses the broad category of "other writing[s] relating to the proceedings" in § 801(14), for the phrase "'related administrative record[s]' [in § 1552(f)] to have any meaning, it must incorporate a broad definition of 'related' to include any administrative document that is connected or has a relationship with a court-martial but is not part of, or contained within, the official records of the court-martial itself." *Id.* at 563. The court thus concluded: "§ 1552(f) captures any administrative record that reflects the decision of the court martial." *Id.* Thus, because Mr. LaBonte's DD-214 notes his court-martial as the reason for his separation (in Block 28), the court determined that it is an administrative record "related" to the court-martial under § 1552(f). *Id.* The court therefore concluded that the ABCMR "is without authority to change the reason for separation due to the court-martial. Because such a change would be necessary for the Board to grant disability retirement in place of separation due to court-martial, the Board is without the authority to grant the plaintiff the relief he seeks." *Id.* at 564. Accordingly, the court ruled that it could not grant Mr. LaBonte the relief he sought. It therefore dismissed his complaint for failure to state a claim upon which relief could be granted. Having dismissed the complaint, the Court of Federal Claims did not reach the merits of Mr. LaBonte's challenge to the decision of the Board. Neither did the court reach Mr. LaBonte's claim that, in rejecting his claim, the Board had violated his Fifth Amendment right to due process.

Mr. LaBonte has timely appealed the Court's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I

We review a dismissal for failure to state a claim upon which relief can be granted by the Court of Federal Claims de novo. *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed.

Cir. 2021).  We also review statutory interpretation by the Court of Federal Claims de novo.  *FastShip, LLC v. United States*, 968 F.3d 1335, 1337 (Fed. Cir. 2020).

## II

On appeal, Mr. LaBonte argues that the Court of Federal Claims erred in granting the government's motion to dismiss.  First, he contends that the court erred in holding that 10 U.S.C. § 1552(f) creates a bar to what he says is the Board's "otherwise broad authority" to act in his case, by preventing the Board from amending his DD-214 to remove the reference to his court-martial.  Appellant's Br. 21.  Second, he argues that even if we were to hold that § 1552(f) prohibits correcting his DD-214 because it currently states that he was court-martialed, nothing prevents the Board from granting Mr. LaBonte disability retirement without removing the court-martial reference on his DD-214.

As explained below, we agree with Mr. LaBonte that the ABCMR was not required to change his DD-214 in order to grant him disability retirement.

## III

In arguing that it is not necessary for the ABCMR to correct his DD-214 in order to grant him the relief he seeks, Mr. LaBonte states at the outset that he "does not primarily seek to correct his DD-214; he seeks disability retirement."  Appellant's Br. 40.  Addressing the Court of Federal Claims' ruling that the Board must remove the reference to his court-martial in order to grant him disability retirement, Mr. LaBonte argues that the Board "can, and does, grant disability retirement by issuing retirement orders without ordering a specific correction to the veteran's DD-214."  *Id.* at 41.  Mr. LaBonte states that this practice is consistent with the regulatory requirement that, at the conclusion of the disability evaluation process, the Army issues "retirement orders or other disposition instructions." *Id.* (citing  AR  635-40  ¶ 4-24(b)).    In  support  of  this

proposition, Mr. LaBonte cites to several correction board decisions where, he says, disability retirement was granted without ordering correction of the veteran's DD-214. Appellant's Br. 41 nn. 7–9.

In response, the government argues that the Court of Federal Claims correctly held that, in order to grant Mr. LaBonte disability retirement, it would be necessary to change his DD-214 to reflect that he was medically separated instead of separated pursuant to a court-martial conviction. The government discounts the relevance of the correction board decisions cited by Mr. LaBonte, urging that they did not involve a claim for disability retirement benefits by a service member who, like Mr. LaBonte, was discharged by a court-martial. Neither, the government contends, did those decisions involve the restrictions set forth in 10 U.S.C. § 1552(f). Appellee's Br. 57–58.

IV

We begin our analysis, as we must, with the pertinent statutory language. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."); *Nicely v. United States*, 23 F.4th 1364, 1368 (Fed. Cir. 2022) ("When interpreting a statute, we 'begin with the language employed by Congress.'" (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004)) (addressing the language of 10 U.S.C. § 1552(a)(1))).

The language of the correction board statute is broad and unqualified. In relevant part, it states that "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). We have stated that "[t]he Secretary [of a military department] is obligated not only to properly determine the nature of any error or injustice,

but also to take 'such corrective action as will appropriately and fully erase such error or compensate such injustice.'" *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (quoting *Caddington v. United States*, 178 F. Supp. 604, 606 (Ct. Cl. 1959)).

Relevant to this case, as seen, AR 635-40 provided the eligibility criteria for disability evaluation. Again, ¶ 4-1 of the regulation stated:

> *a. Uniform Code of Military Justice action.* The case of a Soldier charged with an offense under the Uniform Code of Military Justice (UCMJ) or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge, may not be referred for, or continue, disability processing unless—
>
> > (1) The investigation ends without charges.
> >
> > (2) The officer exercising proper court-martial jurisdiction dismisses the charges.
> >
> > (3) The officer exercising proper court-martial jurisdiction refers the charge for trial to a court-martial that cannot adjudge such a sentence.

As also seen, ¶ 4-2 of the regulation provided that a soldier "may not be referred for, or continue, disability processing if under sentence of dismissal or punitive discharge." The Court of Federal Claims held that because Mr. LaBonte was not currently charged by or undergoing a court-martial, and because his punitive discharge—Bad Conduct Discharge—was no longer reflected in his official record, AR 635-40, in effect at the time of his discharge, did not bar him from disability-retirement processing. As noted, on appeal the government does not challenge this ruling, and for our part we do not discern error in it.

V

We conclude, though, that the Court of Federal Claims erred when it held that, in order to grant Mr. LaBonte the relief he seeks, the Board would have to change his DD-214. As noted above, the DD-214 is titled "Certificate of Release or Discharge from Active Duty." J.A. 754. Pursuant to 10 U.S.C. § 1168(a), "[a] member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, . . . are ready for delivery to him." DoDI 1336.01, which prescribes procedures for the preparation of DD-214 Forms, and which applies to all the military departments, *see* DoDI 1336.01 ¶ 2, provides as follows: "The DD Form 214 will provide an accurate and complete summation of active military personnel service [and] will provide the Military Services with an authoritative source of personnel information for administrative purposes, and for making enlistment or reenlistment eligibility determinations." DoDI 1336.01 ¶ 4(a). In addition, the form serves as "the authoritative source of information required for the administration of State and Federal laws applicable to personnel who have been discharged, released, or transferred to a Reserve Component while on active duty." *Id.* at ¶ 4(f). The Instruction further provides that "[e]very Service member who is being separated shall be given a completed DD Form 214 describing relevant data regarding the Service member's service and the circumstances of termination." DoDI 1336.01 ¶ 4(c). And, it provides, in addition, that "[t]he DD Form 214 will be accurately prepared to provide the Service member a clear, concise summary of active service with the Military Services at the time of transfer, release, discharge, or Service member change of component or status while on active duty." DoDI 1336.01 ¶ 4(d). Paragraph 3(a) of Enclosure 3 of DoDI 1336.01, which deals with the preparation of DD-214s, emphasizes that a "DD Form 214 is an important record of service that must be prepared accurately and completely."

AR 635-8 (2019), previously AR 635-5 (2000), implements DoDI 1336.01. AR 635-8 ¶ 5-1 (2019) states:

> The DD Form 214 is a summary of the Soldier's most recent period of continuous active duty. It provides a brief, clear-cut record of all current active, prior active, and prior inactive duty service at the time of [release from active duty], retirement, or discharge. The DD Form 214 is not intended to have any legal effect on termination of a Soldier's service.

*See also* AR 635-5 ¶ 2-1 (2000).[12] This language also is used in the regulation implementing 10 U.S.C. § 1168. *See* 32 C.F.R. § 45.3 (2006) ("DD Forms 214 are not intended to have any legal effect on termination of the member's service.").

In our view, 10 U.S.C. § 1168(a), DoDI 1336.01, and the cited regulations make it clear that the DD-214 is a record document. Its purpose is to record and reflect the pertinent events of a person's time in the military department in which he or she served. The DD-214 does not establish those events or bring them into being. Rather, it documents that they have occurred or taken place. In other words, a DD-214 Form merely reflects the events of the past. This is highlighted most clearly, we think, by the instruction in 32 C.F.R. § 45.3 (2006) and AR 635-8 ¶ 5-1,

---

[12] Paragraph 2-1 of AR 635-5 (Sept. 15, 2000), used slightly different language. It recited that "The DD Form 214 is a summary of a soldier's most recent period of continuous active duty. It provides a brief, clear-cut record of active duty service at the time of release from active duty, retirement, or discharge." Paragraph 2-1 of AR 635-5, like current AR 635-8, stated that a "DD Form 214 is not intended to have any legal effect on termination of a soldier's service."

formerly AR 635-5 ¶ 2-1, that "[t]he DD Form 214 is not intended to have any legal effect on termination of a Soldier's service."[13] Further support for this conclusion can be found in AR 635-8, which explains that a DD-214 is prepared using various "source documents," including the "[s]ervicemember's record brief," "[s]eparation approval documents, if applicable," the "[s]eparation order," and "[a]ny other document authorized for filing in the [Army Military Human Resource Record]." AR 635-8 ¶ 5-4 (2019); *see also* AR 635-5 ¶ 2-3 (2000) (discussing the preparation of a DD-214 worksheet using "source documents" to include the service member's "record brief," "[s]eparation approval authority documentation, if applicable," "[s]eparation order," and "[a]ny other document authorized for filing in the Official Military Personnel File").

Our conclusion that it is not necessary for the Board to alter Mr. LaBonte's DD-214 in order to grant him disability retirement is supported also by the practice of the military departments. That practice is reflected in the correction board decisions Mr. LaBonte cites. In those decisions, service members' underlying records were altered to grant all or part of their requested relief. *See* ABCMR, No. AR20130022069 (Sept. 11, 2014), https://boards.law.af.mil/ ARMY/BCMR/CY2013/20130022069%20.txt (granting a service member disability retirement by voiding his prior discharge and issuing him new retirement orders, without mentioning his DD-214); ABCMR, No. AR20150007051 (May 28, 2015), https://boards.law.af.mil/ARMY/BCMR/

---

[13] Indeed, a service member's discharge can be effected without actual delivery of a DD-214. *United States v. Butler*, 637 F.3d 519, 522 (5th Cir. 2011) (holding that delivery of an Air Force member's DD-214 was not necessary to effect his discharge where the form was ready for delivery and he could not reasonably have misunderstood his discharged status).

CY2015/20150007051%20.txt (same); ABCMR, No. AR 20120015742 (July 2, 2013), https://boards.law.af.mil/ ARMY/BCMR/CY2012/20120015742.txt (same). In none of these cases did the Board purport to alter the Applicant's DD-214. This approach is consistent with that taken by other branches of the military, which have corrected the records of service members previously separated for reasons of misconduct to reflect a discharge by "Secretarial Authority" independently from a correction to the service member's DD-214.[14]

---

[14] In one of the decisions Mr. LaBonte cites, the Board for Correction of Naval Records ("BCNR") recommended that a service member's "naval record" (as opposed to his DD-214) be corrected to reflect that he was discharged by reason of "Secretarial Authority" (with the corresponding separation code), after the Naval Discharge Review Board upgraded the characterization of his service subsequent to a prior conviction by special court-martial. BCNR 5448-14/8917-13 (June 17, 2014), https://boards.law.af.mil/ NAVY/BCNR/CY2014/NR5448%2014.pdf. This is notable because the BCNR recommended correction of the service member's "naval record . . . to reflect, in [a block] of his DD-214" a medal the service member had earned. *Id.* No such reference to any block of the service member's DD-214 was made with respect to correction of the service member's reason for discharge in his "naval record."

In yet another decision provided by amicus National Veterans Legal Services Program, the BCNR corrected a petitioner's "naval record" to reflect "Secretarial Authority" as the reason for his discharge despite the petitioner's prior bad conduct discharge due to a court-martial conviction. *See* Addendum to Br. for Nat'l Veterans Legal Servs. Program, BCNR [Title and Docket No. Redacted]. In that case, the BCNR recommended that these corrections be made to

As noted above, in ruling that, in order to grant Mr. LaBonte the relief he was requesting, the Board would have to alter his DD-214, the Court of Federal Claims stated:

> Although Secretary Blackmon subsequently determined that the evidence supported the plaintiff's request for relief, the Board's original decision in 2017 informs this discussion. The Board found that the plaintiff had requested "in effect" a correction of his DD-214 to show that "he was retired due to physical disability." . . . The Board concluded that because the plaintiff's court-martial made him ineligible for disability processing, there was "no basis to amend [his] DD Form 214 by changing the reason and authority for separation." . . . The Board itself therefore has answered the question; it would need to correct the plaintiff's DD-214 in order to grant the relief the plaintiff seeks.

*LaBonte*, 150 Fed. Cl. at 562 (alteration in original) (first quoting Admin. R. 86, then quoting Admin R. 115 (J.A. 162)).

We have two difficulties with the court's reasoning. The first is that it fails to address 10 U.S.C. § 1168, 32 C.F.R. § 45.3, AR 635-8, and DoDI 1336.01, which we have just discussed. The second is that it misreads the action of the Board in this case. The court relied on language in the Board's 2017 decision where the ABCMR noted, but declined to grant, Mr. LaBonte's request to amend his DD Form 214 to reflect a different authority and narrative reason for separation. Specifically, in its 2017 decision the Board stated:

the service member's "naval record," and that he be issued a new DD-214. *Id.*

12. With respect to the portion of the request that pertains to a separation/retirement for medical reasons, based on the available post-service medical evidence, it could be argued [Mr. LaBonte] met the criteria for referral to the [disability evaluation system for possible medical retirement] prior to going AWOL.   However, in accordance with [10 U.S.C. §] 1552, the ABCMR is not empowered to set aside a conviction.  As such, and since his discharge resulted from his court-martial conviction, he is ineligible for processing through the [disability evaluation system] for possible medical retirement.

13. Based on paragraph 12 above, . . . there is no basis to amend the applicant's DD Form 214 by changing the reason and authority for separation.

J.A. 162.  This language does not establish that it was necessary for Mr. LaBonte's DD Form 214 to be altered in order for him to receive disability retirement.  Instead, it simply reflects that the reason the Board declined to amend Mr. LaBonte's DD-214 was because it found "no basis" to do so, not because it found such a correction to be required before Mr. LaBonte could receive disability retirement.  Further, the Board's reasoning for saying it had "no basis" to change Mr. LaBonte's form was its inability to set aside his conviction, but his prior conviction does not stand in the way of his eligibility under the court's unchallenged ruling with respect to AR 635-40.  In any event, Mr. LaBonte does not seek to set aside his conviction.  *See, e.g.*, Oral   Arg.   at   10:30–11:20,   https://oralarguments. cafc.uscourts.gov/default.aspx?fl=21-1432_04042022.mp3 (Apr. 4, 2022).

We also note that, before our court, the government has failed to provide any authority to support the proposition that in order to receive disability retirement an applicant's

DD-214 must be corrected. *See, e.g.*, Oral Arg. at 21:55–23:55.

Accordingly, we hold that the Court of Federal Claims erred in ruling that it was necessary for the ABCMR to alter Mr. LaBonte's DD-214 in order to grant him the relief of disability retirement that he is requesting. The court therefore erred in dismissing Mr. LaBonte's complaint on the ground that he had failed to state a claim upon which relief could be granted. The decision of the court is reversed and the case is remanded to the court for further proceedings addressing Mr. LaBonte's challenge to the ABCMR's 2020 remand decision as well as, if necessary, his claim that the Board violated his Fifth Amendment right to due process.

## VI

One issue remains to be addressed, however. At oral argument, counsel for Mr. LaBonte stated that Block 23 of his DD-214 "would actually need to be changed under standard practice" should Mr. LaBonte be awarded medical retirement. Oral Arg. at 53:55–54:20. Block 23 of Mr. LaBonte's DD-214 currently states that his "Type of Separation" was "DISCHARGE." J.A. 754. However, if Mr. LaBonte's disability retirement claim is successful, this entry would be changed to state "RETIREMENT." AR 635-8, ¶ 5-6.w. In that case, we cannot see how providing Mr. LaBonte with a DD-214 reflecting that his "Type of Separation" was "RETIREMENT," while the "Narrative Reason for Separation" and "Separation Code" continue to refer to his court-martial proceedings, would provide him with the "accurate" and "complete" DD-214 that is required by DoDI 1336.01 ¶ 4(a).[15] To the extent that it may become

---

[15] To be clear, as we explained above, changing Mr. Labonte's DD-214 is not a condition precedent to granting him disability retirement. But if Mr. Labonte is granted

necessary to alter Mr. LaBonte's DD-214 at some point in the future in this regard, we see no impediment to doing so in 10 U.S.C. § 1552(f).[16]

As seen, the Court of Federal Claims' primary rationale for its ruling that 10 U.S.C. § 1552(f) bars alteration of Mr. LaBonte's DD-214 was its reliance on dictionary definitions for the meaning of the term "related" in § 1552(f)'s "related administrative records" and its determination that "related" must be broadly construed so as to avoid rendering the language of § 1552(f) "surplusage," in view of 10 U.S.C. § 801(14).[17] *LaBonte*, 150 Fed. Cl. at 563. Most respectfully, we do not agree with this reasoning.

---

disability retirement, his DD-214 should be corrected to accurately and completely reflect his situation.

[16] We state our views on this issue in the interest of judicial economy and for the benefit of the parties and the Court of Federal Claims on remand. *See Hansen Bancorp, Inc. v. United States,* 367 F.3d 1297, 1314 (Fed. Cir. 2004) (providing guidance on the proper measure of restitution in the interest of judicial economy and for the benefit of the parties and the trial court where, on remand, the court could decide the issue of restitution anew); *see also Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009) (giving guidance to the district court on an issue not before the appellate court in the interest of judicial economy); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) ("In the interest of judicial economy, however, we also address certain errors in the district court's attorney fees analysis that could remain issues on remand."). For the reason just stated, alteration of Mr. LaBonte's DD-214 could become an issue on remand.

[17] As previously noted, the court relied on definitions from two dictionaries. *Related, Oxford English Dictionary* (3d ed. 2009) ("Connected or having relation to something else."); *Related, Black's Law Dictionary* (11th ed. 2019)

To begin with, the court's reasoning focused solely on the term "related" in § 1552(f)'s phrase "related administrative records." In its entirety, however, § 1552(f) states "related administrative records *pertaining to court-martial cases*" (emphasis added). The court thus failed to consider the impact of the phrase "pertaining to court-martial cases" in its statutory analysis.

To "pertain" to something means "to belong, be connected (in various ways); e.g. as a native or inhabitant, as part of a whole, as an appendage or accessory, as dependent," *Pertain, Oxford English Dictionary* (2d ed. 1989), or "to belong as a part, member, accessory, or product," *Pertain, Merriam-Webster Collegiate Dictionary* (11th ed. 2003). Section 1552(f)'s reference to administrative records "*pertaining to court-martial cases*" (emphasis added) clearly places Mr. LaBonte's DD-214 outside the scope of the statute. As we have explained, a DD-214 is a record document, reflecting what has taken place. Plainly, it cannot be said to pertain to a court-martial in the sense of being part of the court-martial, which is what "pertaining to" in § 1552(f) requires.

Moreover, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Nat'l Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000)).[18] Therefore, to properly analyze the meaning of

---

("Connected in some way; having relationship to or with something else.").

18   Sections 801 and 1552 reside in different chapters of Title 10. We note that § 801 provides definitions for use "in this chapter," referring to Chapter 47, the Uniform Code of Military Justice. Section 1552, however, resides in

the phrase "related administrative records pertaining to court-martial cases," we must consider the purpose of § 1552(f). *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) ("[I]nterpretation of [a] phrase 'depends upon reading the whole statutory text, considering the purpose and context of the statute . . . .'" (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006))). Congress passed § 1552(f) as part of the Military Justice Act of 1983. The Senate Report that accompanied the bill clarifies that the purpose of § 1552(f) is to protect the court-martial process from collateral review through the record-correction process. S. Rep. No. 98-53, at 36–37 (1983) ("The proposed legislation makes it clear that the appellate procedures under the UCMJ provide the sole forum under title 10, United States Code, for a legal review of the legality of courts-martial."). The Senate Report explains that correction boards "have no authority to modify, as a matter of law, findings or sentences of courts-martial" so as to "channel[] all appellate proceedings and claims for post-conviction relief into the judicial forums established for such actions by Congress in the UCMJ." *Id*. at 36. Indeed, the Senate Report also explains that correction boards are generally comprised of "laymen who have no judicial training" and "have extremely large caseloads, with neither the time nor the expertise for the judicial review of courts-martial." *Id*. Accordingly, and "[b]ecause the UCMJ provides a comprehensive system for appellate review and post-conviction relief, these boards need not be involved in the issues of law concerning the court-martial process." *Id*. We think it is clear from this legislative history that the purpose of § 1552(f) supports an interpretation of "administrative records pertaining to court-martial cases" that is not broadly defined to encompass, in the words of the Court of Federal Claims, "any administrative record that reflects the

---

Chapter 79, which pertains to the Correction of Military Records.

decision of the court-martial." *LaBonte*, 150 Fed. Cl. at 563. Rather, a document, such as a DD-214, which simply reflects that a court-martial took place, but is not a part of, or a product of, the court-martial itself, lies outside the scope of § 1552(f).

Further, an interpretation of "related administrative records pertaining to court-martial cases" that does not encompass documents that do not have a legal impact on a finding or sentence of a court-martial is consistent with guidance provided by the Department of Defense to the Military Discharge Review Boards and Boards for Correction of Military and Naval Records. In the 2014–2018 time period, the Department of Defense issued a series of interpretive memoranda that instructs the boards to give liberal consideration to, for instance, veterans who received less than fully honorable discharges based on misconduct and who were suffering from mental health conditions developed during service, including PTSD and TBI. *See* Memorandum from Secretary of Defense Charles Hagel to Secretaries of the Military Departments (Sept. 3, 2014); Memorandum from Principal Deputy Under Secretary of Defense Brad Carson to Secretaries of the Military Departments (Feb. 24, 2016); Memorandum from Under Secretary of Defense A.M. Kurta to Secretaries of the Military Departments (Aug. 25, 2017) ("Kurta Memo"); Memorandum from Under Secretary of Defense Robert Wilkie to Secretaries of the Military Departments (July 25, 2018) ("Wilkie Memo") (all on file with the Dep't of Defense); *see also Hassay v. United States*, 150 Fed. Cl. 467, 483 (2020) (noting that, in that case, the government conceded these memoranda were binding on the BCNR). The Kurta Memo and Wilkie Memo, at least, make clear that this liberal consideration applies not only to upgrades to the character of a discharge, but also to requests for changes to the narrative reason for separation on a veteran's DD-214. The Kurta Memo, for example, provides clarifying guidance to correction boards and discharge review boards considering

veterans for "modification of their discharges," and provides that "[u]nless otherwise indicated, the term 'discharge' includes the characterization, narrative reason, separation code, and reenlistment code." Kurta Memo at 3. And the Wilkie Memo specifically refers to "[c]hanges to the narrative reason of separation" as a form of relief that can be granted "on equity, injustice, or clemency grounds." Wilkie Memo at 2.

In sum, a DD-214 is not a part of, or a product of, a court-martial itself, nor does it have a legal impact on a finding or sentence of a court-martial. Indeed, as seen, a "DD Form 214 is not intended to have any legal effect on termination of a Soldier's Service." AR 635-8 ¶ 5-1 (2019). And, as Mr. LaBonte acknowledges, regardless of what his DD-214 says, his conviction will not be removed from his underlying military records, nor could it be under 10 U.S.C. § 1552(f). But that is not what Mr. LaBonte seeks. He merely seeks the opportunity to obtain disability retirement benefits for his PTSD and TBI. Should he be awarded such benefits, we conclude that § 1552(f) does not prohibit changing his DD-214 in order for it to be accurate and complete.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Federal Claims is reversed. The case is remanded to the court for further proceedings consistent with this opinion.

## REVERSED AND REMANDED

## COSTS

Costs to Mr. LaBonte.