# United States Court of Appeals for the Federal Circuit

———————————

**ROBERT L. DOYON,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2021-2095

———————————

Appeal from the United States Court of Federal Claims in No. 1:19-cv-01964-LKG, Judge Lydia Kay Griggsby.

———————————

Decided:  January 25, 2023

———————————

MICHAEL CLEMENTE, Latham & Watkins LLP, Washington, DC, argued for plaintiff-appellant.  Also represented by EUGENE R. ELROD, ADAM MICHAEL GREENFIELD; REMINGTON LAMONS, Costa Mesa, CA; ROCHELLE BOBROFF, National Veterans Legal Services Program, Arlington, VA.

ELIZABETH ANNE SPECK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

ALEXANDER O. CANIZARES, Perkins Coie, LLP,

Washington, DC, for amicus curiae Connecticut Veterans Legal Center. Also represented by JOHN MICHAEL GEISE, Elias Law Group LLP, Washington, DC.

MAYA M. ECKSTEIN, Hunton Andrews Kurth LLP, Richmond, VA, for amicus curiae Protect Our Defenders. Also represented by JEFFREY PIERCE LAMBERSON; KEVIN EDWARD GAUNT, Washington, DC.

ALEC UMBERTO GHEZZI, Veterans' Voice of America, Silver Spring, MD, for amicus curiae Vietnam Veterans of America.

--------------------

Before NEWMAN, LINN, and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge*.

Plaintiff-Appellant Robert Doyon petitioned the Board for the Correction of Naval Records (BCNR) to correct his military service records to state that he was discharged from the Navy for service-connected post-traumatic stress disorder (PTSD) rather than a "personality disorder." After the BCNR denied his petition, Doyon brought suit in the Court of Federal Claims (Claims Court), seeking disability retirement payment for service-connected PTSD pursuant to 10 U.S.C. § 1201 and alleging that the BCNR failed to review his application with "liberal consideration." The government moved for judgment on the administrative record, which the Claims Court granted. The court reasoned that the "liberal consideration" standard does not apply to the type of correction Mr. Doyon requested.

Because Mr. Doyon challenges the correctness of the narrative reason for his discharge, as stated in his military records, and because both 10 U.S.C. § 1552(h) and a Department of Defense memorandum (Kurta Memo) require liberal consideration for such correction requests, the Claims     Court     erred     in     holding     that     the     liberal

consideration standard does not apply to Mr. Doyon's petition. Accordingly, we *vacate* the Claims Court's decision granting judgment on the administrative record in favor of the government and *remand* with instructions to afford Mr. Doyon's application liberal consideration.

BACKGROUND

## I. Statutory and Regulatory Background

Congress created a statutory framework of administrative boards to adjudicate petitions by current or former military service members to correct their military records. 10 U.S.C. § 1552. Congress authorized the Secretaries of military departments, acting through such administrative boards for each department, to "correct any military record" when "necessary to correct an error or remove an injustice." *Id.* § 1552(a)(1); *see also* 32 C.F.R. § 723.2 (establishing the BCNR). A service member who believes he was erroneously denied disability retirement due to errors in his military records may petition the BCNR for correction of his military record. *See Chambers v. United States*, 417 F.3d 1218, 1225 (Fed. Cir. 2005) (explaining that "where the service member was released from service without a [retirement] board hearing and subsequently files a claim for disability retirement before a military correction board, the Correction Board becomes the first proper board to act (or to be asked to act) on the matter . . . . [and a] Correction Board proceeding becomes a *mandatory* remedy" (internal quotation marks and citation omitted)). There is no dispute that the BCNR has the power to make corrections granting or amending military disability retirement. Appellant's Br. 34; Appellee's Br. 20.

In 2014, Secretary of Defense Chuck Hagel issued guidance to correction boards regarding claims seeking to upgrade a service member's discharge characterization based on previously unrecognized PTSD. J.A. 1232–35 (Hagel Memo). The Hagel Memo noted that, because "PTSD was not recognized as a diagnosis at the time of service" for

Vietnam veterans and because PTSD diagnoses often "were not made until decades after service was completed," many veterans' records lack sufficient "substantive information" concerning PTSD. J.A. 1232. The Hagel Memo therefore instructed correction boards to give liberal consideration to "petitions for changes in characterization of service" when the former service member's records "document one or more symptoms" of PTSD. *Id.* "Characterization of service" is a term of art that appears on military discharge paperwork and that reflects the circumstances of a veteran's separation from military service—i.e., "Honorable," "General (Under Honorable Conditions)," and "Under Other Than Honorable Conditions." *See* Dep't of Defense (DoD) Instruction 1332.14 at Encl. 4, ¶ 3(b)(2).

Then, on August 25, 2017, Undersecretary of Defense Anthony Kurta issued another memorandum, titled "Clarifying Guidance to Military Discharge Review Boards and Boards for Correction Military/Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions; Traumatic Brain Injury; Sexual Assault; or Sexual Harassment" (Kurta Memo), to expand on the Hagel Memo and to promote "greater uniformity amongst the review boards." J.A. 1940; *see also* J.A. 1943 ¶ 22. Unlike the Hagel Memo, which was focused on "petitions for changes in characterization of service"—e.g., changing a service member's discharge from dishonorable or less-than-honorable to honorable, J.A. 1234, the Kurta Memo's guidance is not limited to discharge characterization upgrades and applies to "any petition seeking discharge relief including requests to change the narrative reason, re-enlistment codes, and upgrades from General to Honorable characterizations," J.A. 1943 ¶ 24.

Like the Hagel Memo, the Kurta Memo explains that the more lenient liberal consideration evidentiary standard is appropriate for PTSD-related correction claims because "[i]t is unreasonable to expect the same level of proof for injustices committed years ago when . . . PTSD . . . w[as]

far less understood than [it is] today." J.A. 1943–44 ¶ 26(a), (b), (k). Evidence relevant to a PTSD-related petition may include "changes in behavior, . . . deterioration in work performance; inability of the individual to conform their behavior to the expectations of the military environment; substance abuse; episodes of depression, panic attacks, or anxiety" and more. J.A. 1941 ¶ 5. Additionally, the "veteran's testimony alone" may establish the existence of PTSD, and a service-connection determination by the VA is "persuasive evidence" that PTSD existed during military service. J.A. 1942 ¶¶ 13–14. There is no dispute that the Hagel and Kurta Memos' guidance is binding on the BCNR. *See Fisher v. United States*, 402 F.3d 1167, 1177 (Fed. Cir. 2005) ("[T]he military is bound to follow its own procedural regulations should it choose to promulgate them.").

Congress subsequently codified the liberal consideration standard into the BCNR's authorizing statute on December 12, 2017, when it amended 10 U.S.C. § 1552 to add sub-section (h). *See* National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91 § 520, 131 Stat. 1283, 1379, 1380 (2017). Section 1552(h) imposed a requirement on correction boards to review claims involving PTSD with liberal consideration. *See* 10 U.S.C. § 1552(h).

Under controlling naval regulations at the time of Mr. Doyon's discharge, service members could be "separated [from military service], by reason of unsuitability, with an honorable or general discharge" for, among other reasons, character and behavioral disorders "[a]s determined by medical authority." J.A. 1834 (Bureau of Naval Personnel Manual—Part C) § 10310(1), (2)(e). To discharge a service member as "unsuitable" due to a personality disorder, "the disorder [must be] of such severity as to render the member incapable of serving adequately." *Id.* § 10310(4). Moreover, controlling DoD regulations at the time of Mr. Doyon's discharge distinguished personality disorders, such as character and behavioral disorders, from physical disabilities, such as psychoses and psychoneuroses (then-

analogues to PTSD). *See* DoD Directive 1332.18, Encl. 2, § XIV ¶ 3(a) (Sept. 9, 1968) (J.A. 1190) (specifying that "[c]haracter and behavior disorders may render an individual *unsuitable rather than unfit* because of physical disability" (emphasis added)); *see also id.*, Encl. 1 ¶ E (J.A. 1164) (defining "physical disability" as including "mental disease [except] behavior disorders, personality disorders, and primary mental deficiency").

Military disability retirement, on the other hand, is governed by 10 U.S.C. § 1201, which provides: "[U]pon the Secretary's determination that a service member is 'unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay,' the service member may retire for disability." *See Chambers*, 417 F.3d at 1223, 1224 (quoting 10 U.S.C. § 1201(a)); *see also* DoD Directive 1332.18 § V(A)(1) (Sept. 9, 1968) (J.A. 1153) (setting forth "Standards of Unfitness by Reason of Physical Disability"). A separate Physical Examination Board "determines a service member's fitness for duty and entitlement to disability retirement once a Medical Examination Board . . . finds the soldier does not meet the [military department's] standards for retention under its regulations." *See Chambers*, 417 F.3d at 1225 n.2. So while some service members might be discharged from military service on "unsuitability" grounds, other service members may instead retire from service due to disability if the Secretary of their respective military department determines that they are "unfit" for duty.

## II. Mr. Doyon's Military Service

Mr. Doyon served in the Navy from March 17, 1966, to November 21, 1968. J.A. 1102; J.A. 1136. During the Vietnam War, Mr. Doyon was assigned to the *U.S.S. Intrepid*, where he attained the rank of Airman and received several medals and commendations, including the Vietnam Service Medal (One Bronze Star), the Vietnam Campaign Medal,

and the National Defense Service Medal.  J.A. 1240–46; J.A. 1969.

On July 29, 1967, a rocket misfired on the deck of the *U.S.S. Forrestal*, causing an explosion and fire that resulted in more than 130 deaths and 160 injuries. J.A. 1001–02 ¶ 2; J.A. 1251–55.  From the deck of the *Intrepid*, Mr. Doyon witnessed the immediate aftermath of the explosion and fire.  *Id.*  On October 23, 1967, four members of the *Intrepid* went Absent Without Leave (AWOL). J.A. 1007–08 ¶ 24; J.A. 1255.  Mr. Doyon alleges that because he was friendly with two of the deserters, he was verbally and physically harassed and threatened by his shipmates.  J.A. 1007–08 ¶ 24; J.A. 1577 ¶ 12.  In April 1968, Mr. Doyon's parents wrote to Senator Edward Kennedy about his mental health, and Senator Kennedy, in turn, wrote to the commanding officer of the *Intrepid*. J.A. 1008 ¶ 25.  The commanding officer subsequently reprimanded Mr. Doyon for going outside of the chain of command.  J.A. 1254.

In May 1968, Mr. Doyon went AWOL for two days. J.A. 1246; J.A. 1256; J.A. 1268–69.  Upon his return to the *Intrepid*, Mr. Doyon was referred to the ship's sick bay because of his "inability to get along with his peers, his recent mental agitation and deteriorating work habits, and his expression of admiration for several of 1967's famous four deserters."  J.A. 1009 ¶ 28.  Once admitted to sick bay, he was sedated with Thorazine, which Mr. Doyon contends is an antipsychotic.  J.A. 1009 ¶ 28; J.A. 1115; *see also* J.A. 1258. On August 16, 1968, Mr. Doyon was transferred to Naval Base Subic Bay for further evaluation.  J.A. 1009 ¶ 29. While at Subic Bay, a medical evaluation diagnosed Mr. Doyon with "passive aggressive personality disorder."  J.A. 1009 ¶ 30.

On August 31, 1968, Mr. Doyon returned to the *Intrepid*.  J.A. 1010 ¶ 32.  Less than a month later, Mr. Doyon witnessed a fatal plane crash, including dismemberment of

a fellow Airman, while he was standing duty at a video recording console.    J.A. 1010–11   ¶ 36;   J.A. 1256–57. Mr. Doyon was then spent several hours replaying video recordings of the crash for Air Department and Incident Report Personnel.  J.A. 1011 ¶ 37; J.A. 1257.

On September 26, 1968, the commanding officer of the *Intrepid* recommended the Navy separate Mr. Doyon from military service for unsuitability, citing his diagnosis of passive-aggressive personality disorder. J.A. 1279. A subsequent psychiatric evaluation conducted on October 28, 1968, changed Mr. Doyon's diagnosis to "Emotionally Unstable Personality #3210, with noted paranoid trait in his personality."  J.A. 1002 ¶ 4; J.A. 1115; J.A. 1052.

On November 21, 1968, Mr. Doyon was discharged from the Navy.  J.A. 1134.  The "Characterization of Service" field on Mr. Doyon's DD-214 form[1] characterized his discharge as "Honorable," and the "Reason and Authority" field on his DD-214 form contained a separation code indicating that he was discharged for unsuitability due to a personality disorder.[2]   *See* J.A. 1102.  Accordingly, Mr.

---

[1]    Mr. Doyon's DD-214 form is entitled "Armed Forces of the United States Report of Transfer or Discharge." J.A. 1102.  A DD-214 form provides "a clear, concise   summary   of   each   discrete   period   of   active service . . . . [and] includes relevant data regarding the [service] member's service and the circumstances of termination" and serves as "an authoritative source of personnel information for administrative purposes, and for making enlistment   or   reenlistment   eligibility   determinations."  DoD Instruction 1336.01 § 1.2(d)(1), (2) (Feb. 17, 2022).

[2]    The "BUPERS MANUAL ART. C-10310" separation code in the "Reason and Authority" field of Mr. Doyon's

Doyon was not eligible to receive a military disability retirement.

### III. Administrative Proceedings

In December 2013, Mr. Doyon filed an application for disability compensation with the Department of Veterans Affairs (VA) for PTSD. J.A. 1404. In June 2014, a VA psychiatrist diagnosed Mr. Doyon with PTSD and opined that he had experienced in-service stressors, including witnessing the fatal plane crash and the *Forestall* fire. J.A. 1112–20. The VA subsequently granted Mr. Doyon's application for disability compensation due to PTSD and assigned a 50-percent disability rating, effective December 9, 2013. J.A. 1136–39. On November 18, 2015, based on a PTSD diagnosis by a second VA psychiatrist, the VA granted Mr. Doyon's claim for an increased disability rating and assigned a 70-percent disability rating, effective August 27, 2015. J.A. 1406–12; J.A. 1141–44.

In September 2017, Mr. Doyon sought correction of his military records with the BCNR. J.A. 1068–70. Specifically, Mr. Doyon requested that the BCNR correct the separation code indicating the narrative reason for his discharge on his DD-214 form to: (1) reflect that he was medically retired due to physical disability; (2) reflect that he was unfit and medically retired for psychoses or psychoneuroses (then-analogues to PTSD); and (3) remove any reference to unsuitability due to personality disorder.[3] J.A. 1068; *see also* J.A. 1094 (supporting brief requesting

---

DD-214 corresponds to "Discharge of Enlisted Personnel by Reason of Unsuitability." *See* J.A. 1102; J.A. 1834.

[3] The narrative reason for Mr. Doyon's discharge is a separation code, and he seeks to correct the narrative reason by changing to a different separation code, one necessary for military disability retirement. *See* J.A. 1102; J.A. 1068.

same). Mr. Doyon also argued that his request was entitled to liberal consideration pursuant to 10 U.S.C. § 1552. J.A. 1074.

To support his application, Mr. Doyon submitted a psychiatric evaluation report from Dr. Ted R. Greenzang, who opined that (i) Mr. Doyon experienced manifestations of PTSD at the time of his military discharge from the military, (ii) his medical history was inconsistent with a personality disorder diagnosis, and (iii) his separation from the Navy for unsuitability was "not an appropriate disposition." J.A. 1423–39. The BCNR then sought an advisory opinion from Secretary of the Navy Council of Review Boards (CORB), J.A. 1067, and a CORB medical advisor responded that the evidence did not support a determination that Mr. Doyon had a PTSD-based physical disability, J.A. 1052–57. The medical advisor therefore concluded that there was insufficient evidence to support an unfitness determination but noted that reconsideration would be appropriate "[s]hould further evidence surface supporting unfitness or a disability retirement." J.A. 1056. Mr. Doyon responded to that advisory opinion and submitted a responsive report from Dr. Greenzang. J.A. 1803–12; J.A. 1815–20.

On November 20, 2018, the BCNR denied Mr. Doyon's petition. J.A. 1049–51. The BCNR "substantially concurred" with the advisory opinion, concluding that the evidentiary record did not warrant a change to Mr. Doyon's military record. J.A. 1050. As to Dr. Greenzang's opinion and Mr. Doyon's recent VA ratings for his PTSD condition, the BCNR found that "these findings were made too distant in time from 1968 to be probative of [Mr. Doyon's] fitness for continued naval service in 1968" and there was "more than enough evidence [in Mr. Doyon's military record] of behavior consistent with a personality disorder to support the diagnosis made in 1968." *Id.*

## IV. Claims Court Proceeding

On December 27, 2019, Mr. Doyon initiated a military pay action before the Claims Court, challenging the BCNR's denial of his request to correct his military records to reflect that he was unfit for duty and medically retired for psychosis or psychoneuroses associated with PTSD. *Doyon v. United States*, No. 19-1964C, 2021 WL 120923, at *1 (Fed. Cl. Jan. 13, 2021). As relief, Mr. Doyon sought (i) an order that his military records be corrected, (ii) military disability retirement pay, and (iii) other pay. *Id.* The government moved to dismiss Mr. Doyon's complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. *Id.* The parties also filed cross-motions for judgment upon the administrative record. *Id.* Mr. Doyon argued that the BCNR erred by failing to review his application with liberal consideration pursuant to 10 U.S.C. § 1552(h) and the Kurta Memo. J.A. 2134–35; J.A. 2304–05; J.A. 2326. The government argued that the Kurta Memo does not mandate liberal consideration under the circumstances because the memo is limited to misconduct-based upgrades or modifications to a service member's characterization of service (characterization upgrades)—e.g., changing a service member's discharge from dishonorable or less-than-honorable to honorable. J.A. 2212. The government did not substantively respond to Mr. Doyon's § 1552(h) arguments. *See* J.A. 2214.

In its decision, the Claims Court concluded that the Kurta Memo is not limited to misconduct-based discharge upgrades or modifications but instead requires the BCNR to also afford liberal consideration to requests seeking to correct the narrative reason for a service member's discharge. *See Doyon*, 2021 WL 120923, at *10. The court found, however, that the BCNR did not err by not applying liberal consideration to Mr. Doyon's case because he sought "a determination regarding his fitness for duty in 1968," which is a necessary finding for military disability

retirement, rather than "challeng[ing] the narrative reason for his discharge" from the Navy for unsuitability based on a personality disorder. *Id.*; *see also* 10 U.S.C. § 1201(a).

Mr. Doyon timely appealed to this court. We have jurisdiction over an appeal from a final decision of the Claims Court pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I. Standard of Review

Service members who are dissatisfied with the decision of the BCNR may seek judicial review, *Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991), but a court may only set aside the BCNR's decision if it was "arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law"—i.e., "essentially the standard under which administrative agency decisions are reviewed," *Fisher*, 402 F.3d at 1180. "We review a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record without deference." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers*, 417 F.3d at 1227). We therefore apply "the same standard of review as the trial court" and will not disturb the BCNR's decision unless it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.*

### II. Liberal Consideration

Mr. Doyon's application asked the BCNR to change the narrative reason for his discharge indicated on his DD-214 form from unsuitability due to personality disorder to a PTSD-related physical disability so that he would be eligible for disability retirement payments. Appellant's Br. 40–41; J.A. 1068; J.A. 1073, 1094. The only dispute is whether the BCNR was required to apply a "liberal consideration" standard to Mr. Doyon's application pursuant to either the Kurta Memo or 10 U.S.C. § 1552(h). We consider each theory separately.

### A.  Kurta Memo

Mr. Doyon argues that the BCNR should have given liberal consideration, in view of the Kurta Memo, to his application to correct the narrative reason on his DD-214 form.  Appellant's Br. 39–49.  The government again argues that the Kurta Memo is limited to characterization upgrades and does not encompass changing a narrative reason for discharge to medical disability retirement.  Appellee's Br. 32–35.  We agree with the Claims Court that the Kurta Memo is not limited to characterization upgrades but "requires that the BCNR give 'liberal consideration' to applications seeking discharge relief that challenge the narrative reason for a military discharge." *Doyon*, 2021 WL 120923, at \*10.  However, we disagree with the Claims Court's finding that Mr. Doyon is not challenging the reason for his discharge.  Mr. Doyon requested the BCNR change the narrative reason on his DD-214 form to reflect that he was discharged due to physical disability (i.e., PTSD) rather than personality disorder.  Mr. Doyon thus challenged his narrative reason for discharge, and such challenge is entitled to liberal consideration under the Kurta Memo.

To ensure "greater uniformity amongst the review boards," the Kurta Memo instructs that liberal consideration (1) "will be given" to a veteran's application for discharge relief "based in whole or in part on matters relating to mental health conditions, including PTSD"; and (2) is not limited to characterization upgrades (e.g., from Under Other Than Honorable Condition to Honorable Discharge) but "appl[ies] to *any petition seeking discharge relief* including requests to change the *narrative reason*, re-enlistment codes, and upgrades from General to Honorable characterizations." J.A. 1940; J.A. 1941 ¶ 3; J.A. 1943 ¶ 24 (emphasis added); *see also* J.A. 1943 ¶ 20 (defining "discharge" as including "the characterization, *narrative reason*, separation code, and re-enlistment code" (emphasis added)).  In other words, the narrative reason for discharge is a

distinct, recognized basis for correction, separate and apart from upgrading or modifying a service member's characterization of service, and is entitled to liberal consideration. *See also LaBonte v. United States*, 43 F.4th 1357, 1374 (Fed. Cir. 2022) (noting that "[t]he Kurta Memo . . . make[s] clear that this liberal consideration applies not only to upgrades to the character of a discharge, but also to requests for changes to the narrative reason for separation on a veteran's DD-214").

Moreover, the Kurta Memo expressly authorizes the BCNR to analyze evidence related to the correctness of the narrative reason for discharge: "Evidence that may reasonably support more than one diagnosis or a change in diagnosis, particularly where the diagnosis is *listed as the narrative reason for discharge*, will be liberally construed as *warranting a change in narrative reason* to 'Secretarial Authority,' 'Condition not a disability,' or *another appropriate basis*." J.A. 1942–43 ¶ 17 (emphasis added); *see also* J.A. 1942 ¶¶ 13–14 (explaining that "[a] diagnosis made by a licensed psychiatrist or psychologist that the condition existed during military service will receive liberal consideration" and that a determination made by the VA should be considered "persuasive evidence" that PTSD existed during military service). The memo further explains that "liberal consideration" is the appropriate evidentiary burden under these circumstances because "[i]t is unreasonable to expect the same level of proof for injustices committed years ago when" PTSD was "far less understood than [it is] today." J.A. 1943 ¶ 26. In sum, a veteran's challenge to the recorded narrative reason for discharge necessarily encompasses the factual determinations necessary to correct or maintain the narrative reason.

Here, Mr. Doyon contends that the narrative reason for his discharge, as represented in his DD-214 form, should be corrected from the "BUPERSMAN Art. C-10310, 265" separation code (i.e., unsuitability due to personality disorder) to the "BUPERSMAN C-10305" separation code (i.e.,

separation due to physical disability). Appellant's Br. 40–41; J.A. 1001 (Appellant's complaint to the Claims Court); *see also* J.A. 1068 (Appellant's application to the BCNR); J.A. 1073, 1094 (Appellant's briefing to the BCNR); J.A. 1969 (Appellant's DD-214 form); J.A. 1830 (description for BUPERSMAN C-10305). Regardless of whether an unfitness determination is necessary for an ultimate determination of whether Mr. Doyon was entitled to military disability retirement, *see Doyon*, 2021 WL 120923, at \*10, Mr. Doyon's application to the BCNR is nonetheless a challenge to the accuracy of the narrative reason listed on his DD-214 form. As such, the Kurta Memo requires that the BCNR review Mr. Doyon's application with liberal consideration.

Because the Claims Court mischaracterized Mr. Doyon's claim as not challenging the narrative reason for his discharge and, thus, determined that liberal consideration was not required, vacatur is warranted. We offer no opinion as to whether liberal consideration would entitle Mr. Doyon to a correction of his DD-214 form or to disability retirement. *See* discussion *infra* § III. The BCNR legally erred by reviewing the merits of Mr. Doyon's application without giving it liberal consideration.

### B.  10 U.S.C. § 1552(H)

Mr. Doyon separately argues that 10 U.S.C. § 1552(h) requires that the BCNR give liberal consideration to his correction request because his application is a "claim under [§ 1552] for review of a discharge," "based in whole or in part on matters related to [PTSD]," and his service-connected PTSD "contributed to the circumstances resulting in [his] discharge." Appellant's Br. 32–33 (quoting § 1552(h)(1), (2)(B)). The government disagrees, arguing that § 1552(h) cannot be retroactively applied to his application and that it is substantively inapplicable to the same.

We disagree with the government and address each objection separately.[4]

1

The government argues that Mr. Doyon failed to demonstrate that § 1552(h), which was enacted after Mr. Doyon filed his application to the BCNR, retroactively applied to his application. Appellee's Br. 20. Although the government's argument was not presented to the Claims

---

[4] The government also asserts that Mr. Doyon did not preserve his § 1552(h)-based arguments by failing to present it to the BCNR. Appellant's Br. 18–20. Even if that were the case, the government did not object below when Mr. Doyon repeatedly argued to the Claims Court that § 1552(h)(2)(B) required the BCNR to review his application with liberal consideration. J.A. 2134–35; J.A. 2304–05; J.A. 2326 & n.1. Accordingly, the government forfeited its preservation argument. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020). Moreover, we exercise our discretion to consider the interpretation of § 1552(h) because Mr. Doyon pressed his § 1552(h)-based argument to the Claims Court and the parties' cross-motions for judgment based on the administrative record suggest that the factual record needs no further development. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."); *see also White v. U.S. Dep't of the Army*, 720 F.2d 209, 211 (D.C. Cir. 1983) ("Exercise of that discretion is particularly appropriate where . . . the question is a purely legal one, the resolution of which would not be aided by any further factual development. . . . [and the agency] has fully stated its position and reasoning on this issue.").

Court—despite argument by Mr. Doyon regarding § 1552(h)—we nonetheless conclude that § 1552(h) applies to the BCNR's decision on Mr. Doyon's application.

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 269 (1994). To determine whether a "statute should be applied to a case that originated before the statute was passed"—i.e., whether applying the statute would have improper "retroactive effect"—the question is "whether the new provision attaches new legal consequences to events completed before its enactment." *Rodriguez v. Peake*, 511 F.3d 1147, 1152–53 (Fed. Cir. 2008) (citing *Landgraf*, 511 U.S. at 269–70).

We typically examine three factors to determine whether a statute would have retroactive effect: "(1) whether it would impair rights possessed by a party when he acted, (2) whether it would increase a party's liability for past conduct, or (3) whether it would impose new duties with respect to already completed transactions." *Id.* at 1153. Here, 10 U.S.C. § 1552(h) prescribes the circumstances in which the BCNR must apply liberal consideration. It does not impair Mr. Doyon's rights, increase his liability for past conduct, or impose any new duties on him. Likewise, § 1552(h) does not impair the rights of, increase the liability of, or impose new legal consequences on the government because the Kurta Memo already required the BCNR to review "any petition seeking discharge relief" with liberal consideration. *See Rodriguez v. Peake*, 511 F.3d at 1152–53; *see also* J.A. 1943. As such, the BCNR was obligated to "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *See Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974); *see also Landgraf*, 511 U.S. at 278 (explaining that *Bradley* is "consistent with a presumption against statutory retroactivity"). And although the Claims

Court recognized that Congress codified the liberal consideration standard with respect to reviewing "the circumstances resulting in the discharge," *Doyon*, 2021 WL 120923, at \*3 (quoting 10 U.S.C. § 1552(h)(2)(B)), the court did not apply § 1552(h), which was "in effect at the time it render[ed] its decision," nor explain its decision not to apply § 1552(h), *cf. Bradley*, 416 U.S. at 711. We therefore hold that the BCNR and Claims Court erred by failing to consider the effect of § 1552(h) on Mr. Doyon's application.

2

The government also argues that the plain meaning of "review of a discharge or dismissal" in 10 U.S.C. § 1552(h) does not include review of an honorable discharge for reasons other than misconduct. Appellee's Br. 21. We disagree.

Section 1552(h) codified the liberal consideration standard prescribed by the Kurta Memo. Section 1552(h) states in full:

(h)(1) This subsection applies to a former member of the armed forces whose claim under this section for review of a discharge or dismissal is *based in whole or in part on matters relating to post-traumatic stress disorder* or traumatic brain injury as supporting rationale, or as justification for priority consideration, and *whose post-traumatic stress disorder* or traumatic brain injury *is related to combat* or military sexual trauma, as determined by the Secretary concerned.

(2) In the case of a claimant described in paragraph (1), a board established under subsection (a)(1) shall—

(A) review medical evidence of the Secretary of Veterans Affairs or a civilian health care provider that is presented by the claimant; and

> (B) review the claim *with liberal considera-tion* to the claimant *that post-traumatic stress disorder* or traumatic brain injury potentially *contributed to the circum-stances resulting in the discharge* or dismis-sal or to the original characterization of the claimant's discharge or dismissal.

10 U.S.C. § 1552(h) (emphases added).  In short, § 1552(h) applies to all "former member[s] of the armed forces whose claim under this section for review of a discharge or dismis-sal is based in whole or in part on matters relating to post-traumatic stress disorder."  *Id.* § 1552(h)(1).  And the BCNR must review such claims "with liberal consideration to the claimant that post-traumatic stress disorder" (1) "po-tentially contributed to the circumstances resulting in the discharge or dismissal" or (2) potentially contributed to the "original characterization of the claimant's discharge or dismissal."  *Id.* § 1552(h)(2)(B).

There appears to be no dispute that Mr. Doyon is a "for-mer member of the armed forces." *See id.* § 1552(h)(1).  Nor that his claim is "based in whole or in part on matters re-lating to post-traumatic stress disorder" that is "related to combat." *Id.* § 1552(h)(1); *see also Doyon*, 2021 WL 120923, at *13  (Claims Court noting that Mr. Doyon's "PTSD diag-nosis is not in dispute").  Instead, the parties dispute whether Mr. Doyon's application seeks a "review of a dis-charge or dismissal" that is entitled to liberal considera-tion. *See* Appellant's Br. 33–38; Appellee's Br. 21–23.

The government argues that liberal consideration un-der § 1552(h) is limited only to upgrading or modifying a service member's characterization of service. *See* Appel-lee's Br. 23.  However, nothing in the text of § 1552(h) lim-its liberal consideration for PTSD-related claims to characterization upgrades or any other subset of miscon-duct-related discharge relief regularly provided by the BCNR.  Although not defined within the statute, the word

"discharge" in § 1552(h)(1)'s "review of a discharge or dismissal" language plainly refers to "severance from military service." *See Gumpenberger v. Wilkie*, 973 F.3d 1379, 1382 (Fed. Cir. 2020) ("A court interpreting the statute 'presume[s] that Congress intended to give those words their plain and ordinary meanings.'" (alteration in original) (citation omitted)); *see also Discharge*, Black's Law Dictionary (11th ed. 2019) ("8. The dismissal of a member of the armed services from military service."); DoD Instruction 1332.14, Encl. 6, at 54 (defining "discharge as "[c]omplete severance from all military status gained through enlistment or induction"). Even if "discharge" may refer to characterization of service when the term is accompanied by a preceding characterization modifier,[5] such as "honorable discharge," for example, the *unmodified* "discharge" recited in § 1552(h)(1) is not limited to any particular characterization, honorable or otherwise. Moreover, the government's blanket, unsupported assertion that "discharge" has a settled meaning that is limited to a service member's characterization of service, *see* Appellant's Br. 32–33, is undermined by the Kurta Memo's definition of "discharge" as encompassing "narrative reason, separation code, and re-enlistment code" in addition to "characterization," *see* J.A. 1943 ¶ 20.

Furthermore, the express language of the statute makes clear that "review of discharge or dismissal" is not limited to just upgrading or modifying characterization of service. The statute does state, as *one* basis for providing liberal consideration, a claim that PTSD potentially contributed to "the original characterization of the claimant's

---

[5]    *See Discharge*, Black's Law Dictionary (11th ed. 2019) (providing characterization-specific definitions for "administrative discharge," "bad-conduct discharge," "dishonorable discharge," "general discharge," "honorable discharge," and "undesirable discharge").

discharge or dismissal." 10 U.S.C. § 1552(h)(2)(B). But the statute also states a *second*, broader basis for liberal consideration:  whether PTSD "potentially contributed to the circumstances resulting in the discharge or dismissal." *Id.* Had Congress intended to limit liberal consideration only to upgrading or modifying a service member's characterization of service, the statute would not include the alterative "circumstances resulting in the discharge" clause as an additional, separate ground for liberal consideration. *See id.* The government's overly narrow reading would render the "circumstances resulting in the discharge or dismissal" clause superfluous and violate the "'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *See Gumpenberger*, 973 F.3d at 1382 (citation omitted); *see also*, *e.g.*, *Lowe v. SEC*, 472 U.S. 181, 207 n.53 (1985); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174–79 (2012). Moreover, whether the reason for Mr. Doyon's discharge from the Navy was based on a misdiagnosis of personality disorder instead of PSTD is a question that falls within the plain meaning of the "circumstances resulting in the discharge," to which § 1552(h)(2)(B) affords "liberal consideration."

Contrary to the government's arguments, that similar "liberal consideration" language is found in 10 U.S.C. § 1553(d) does not control or limit 10 U.S.C. § 1552(h). *See* Appellee's Br. 23. Section 1553 establishes discharge review boards (DRBs), which have the limited authority to "change a discharge or dismissal, or issue a new discharge." 10 U.S.C. § 1553(b)(1); *see also* 32 C.F.R. § 724.205(a)(9) ("The [DRB] shall have no authority to . . . [c]hange the reason for discharge *from or to a physical disability*." (emphasis added)). The BCNR's authority is broader; it may "correct *any* military record" when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (emphasis added). So unlike the BCNR, the scope of liberal

consideration at the DRB is circumscribed by the jurisdiction of the DRB, not by the language in § 1553(d).

Accordingly, 10 U.S.C. § 1552(h)(1)'s "review of a discharge" refers to the BCNR's power to review and correct records related to a former service member's "severance from military service."[6]  Mr. Doyon's DD-214 form, titled "Report of Transfer or Discharge," includes a field indicating the narrative reason for his discharge—i.e., the "Reason and Authority."  J.A. 1102.  Mr. Doyon seeks to correct this field.  J.A. 1068; *see also* J.A. 1094.  Whether Mr. Doyon's discharge was misattributed to unsuitability based on a personality disorder instead of unfitness based on PTSD-related disability plainly falls within 10 U.S.C. § 1552(h)'s requirement that the BCNR shall apply liberal consideration when reviewing whether PTSD "potentially contributed to the circumstances resulting in the discharge."  Thus, the BCNR erred by not reviewing Mr.

---

[6]    After oral arguments, the government filed a letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, arguing that "disability retirement is not a 'discharge' because it is not a complete severance from all military status."  *See* Appellee's Letter, No. 21-2095 (July 6, 2022), ECF No. 61.  Although the government purports to offer this argument "in response to Mr. Doyon's argument that his request for a disability retirement is encompassed by a 'review of a discharge or dismissal'" under 10 U.S.C. § 1552(h) or the Kurta Memo, *id.*, the government never raised this argument to the Claims Court.  *See* discussion *supra* note 4 (discussing the government's forfeiture).  Notwithstanding forfeiture, Mr. Doyon was in fact discharged from the Navy, and it is the recorded reason for that discharge for which he seeks review and correction, regardless of whether disability retirement is a complete separation from the military.

Doyon's application to correct his DD-214 form with liberal consideration.[7]

### III.  Military Disability Retirement

Although this case is narrowly about correcting Mr. Doyon's military records to reflect a discharge due to PTSD instead of a personality disorder, there is a larger underlying dispute about whether Mr. Doyon was unfit, rather than unsuitable, for service at the time of his discharge from the Navy.  Mr. Doyon argues that once the BCNR determines that PTSD, rather than a personality disorder, was the basis of his discharge from the Navy, he is automatically entitled to a new separation code reflecting unfitness due to physical disability, and that entitles him to medical retirement.  *See* Appellant's Br. 57–60; Appellant's Reply Br. 28–29; J.A. 1068.  The government disagrees, arguing that a determination that Mr. Doyon was discharged due to PTSD does not automatically mean that he was also unfit for service, which is a separate determination necessary for him to receive medical retirement.  *See* Appellee's Br. 51–53.  This unfitness dispute between the parties is not properly before us at this stage and can be addressed, if necessary, on remand.

Accordingly, this case is remanded to the Claims Court to instruct the BCNR to consider whether the record evidence indicates, under the "liberal consideration"

---

[7]  Mr. Doyon also argues that the BCNR's decision, even without liberal consideration, is not supported by substantial evidence.  Appellant's Br. 48–57.  Because we decide today that the BCNR applied the wrong legal standard in assessing Mr. Doyon's petition, we think the better course is to have the BCNR apply the liberal consideration standard in the first instance rather than our court review fact findings that had been made using an incorrect legal standard.

standard, that PTSD-related psychoses or psychoneuroses "contributed to the circumstances resulting in [Mr. Doyon's] discharge," *see* 10 U.S.C. § 1552(h)(2), and "warrant[s] a change in [the] narrative reason" for Mr. Doyon's discharge from the Navy, *see, e.g.*, J.A. 1942–43.

## CONCLUSION

For the foregoing reasons, the Claims Court's decision is vacated. The case is remanded to the court for further proceedings consistent with this opinion.

## VACATED AND REMANDED

### COSTS

Costs to Appellant.