# United States Court of Appeals
# for the Federal Circuit

---

**MATTHEW R. KELLY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1365

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00579-KCD, Judge Kathryn C. Davis.

---

Decided: May 30, 2023

---

JASON W. MANNE, Manne Law Office, Pittsburgh, PA, argued for plaintiff-appellant.

WILLIAM PORTER RAYEL, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE.

---

Before NEWMAN, REYNA, and STOLL, *Circuit Judges.*

REYNA, *Circuit Judge.*

Matthew R. Kelly appeals from a decision by the United States Court of Federal Claims sustaining a determination by the Board for Correction of Naval Records that denied Mr. Kelly's request for military disability retirement pay. Mr. Kelly served eight years in the U.S. Navy as a diver. In December 2013, he was separated from service "Under Honorable Conditions" based on misconduct. Years later, he sought and received from the Board for Correction of Naval Records an upgrade in his discharge characterization to "Honorable," and a change in narrative reason for separation that omitted the "misconduct" basis. Mr. Kelly contends that once he obtained the upgrade and the change in narrative, he became eligible for military disability retirement pay. The Board for Correction of Naval Records disagreed, finding that Mr. Kelly was not eligible for military disability retirement pay. The Court of Federal Claims affirmed. We vacate the Court of Federal Claims' affirmance and remand for a determination consistent with this opinion.

## BACKGROUND

### Naval Separation and Disability

U.S. military service members are potentially eligible for two types of post-service disability benefits: military disability retirement pay and veteran disability benefits. The Department of Defense administers military disability retirement pay, *see* 10 U.S.C. § 1201, and the Department of Veterans Affairs ("VA") administers veteran disability benefits, *see* 38 U.S.C. § 1110. This appeal involves the military disability retirement pay administered by the Department of Defense, specifically the U.S. Navy.

Generally, each branch of the military is required to develop a military disability retirement procedure, including evaluating service members' medical conditions, their ability to continue service, and their eligibility for military disability retirement pay or severance payments. *See* 10 U.S.C. § 1216(a). The evaluation process may result in a

disability rating percentage, which is then used to determine whether the service member is entitled to military disability retirement pay. *See id.* §§ 1201(a)–(b).

To receive military disability retirement benefits, a service member determined "unfit to perform the duties of the member's office, grade, rank, or rating because of a physical disability" must have at least 20 years of service *or* a disability rating greater than 30%. *Id.* § 1201(a); *id.* §§ 1201(b)(3)(A)–(B). A disability rating percentage less than 30% means the service member is eligible for only a one-time severance payment, but no continuing benefits. *Id.* §§ 1203(a)–(b). The disability rating percentages are based on "the schedule for rating disabilities in use by the [VA]" and "take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating." *Id.* § 1216a.

The existence of a VA rating alone does not mean a service member is entitled to military disability retirement pay. Under the statute, there must also be a finding that the disability is: (a) of a permanent nature or such a degree to preclude return to that service member's military duty within a reasonable period of time, (b) not be the result of intentional misconduct or willful neglect, and, for service members with less than 20 years of service, (c) not have been incurred during a period of unauthorized absence. *Id.* §§ 1201, 1203.

The Navy implemented these statutory mandates in its policies and regulations, including the Secretary of the Navy Instruction ("SECNAVINST"). Specifically, SECNAVINST 1850.4E sets out the regulatory regime for making disability retirement determinations.[1] For this

---

[1] The Secretary of the Navy "canceled" SECNAVINST 1850.4E on June 27, 2019, in

regime, the Secretary of the Navy designated the Physical Evaluation Board ("PEB") as the entity responsible "to act on behalf of the [Secretary of the Navy] to make determinations of fitness to continue naval service, entitlement to benefits, disability ratings, and disposition of service members referred" to it from the Navy. SECNAVINST 1850.4E at 2–3. The process itself is known as the Disability Evaluation System ("Evaluation System").

The Evaluation System process is triggered when a service member is referred for medical evaluation by the commanding officer, the commanding officer of the medical treatment facility treating the service member, or the service member's individual medical or dental officer. SECNAVINST 1850.4E § 3106. A service member cannot self-refer to the Evaluation System.

There are other restrictions that affect whether a service member can be referred to the Evaluation System. Two such restrictions are pertinent here: SECNAVINST 1850.4E § 1002 and § 3403. Under §§ 1002 and 3403, disciplinary and misconduct separation "takes precedence over" any contemporaneous disability separation or referral to the Evaluation System. As a result, any service member being processed for misconduct that could result in, *inter alia*, administrative discharge due to misconduct cannot also be referred to the Evaluation System at the same time. *Id.* at §§ 1002, 3403. For those already referred to the Evaluation System, the "disability evaluation shall be suspended" while the service member is processed for misconduct. *Id.* at § 3403. Then, and only if "a punitive discharge or administrative discharge for misconduct does not result," can the Evaluation System process advance.

---

SECNAVINST 1850.4F. SECNAVINST 1850.4F does not explicitly state it is retroactive and neither party has argued it is retroactive for this appeal. Thus, relevant to this appeal is the pre-canceled SECNAVINST 1850.4E.

*Id*. at § 1002.  In other words, service members separated from service for misconduct are foreclosed from receiving a disability evaluation from the Evaluation System.

If a service member is referred to the Evaluation System, the PEB is tasked with determining whether the service member can reasonably be expected to perform the requirements and duties of his or her office, grade, rank or rating in light of the disability.  *Id*. at §§ 3301–3302.  The SECNAVINST provides four considerations to assess in determining whether a service member can reasonably perform his or her duties:  (1) common military tasks, i.e., whether, due to the disability, the member is unable to reasonably perform routine duties expected of his or her office, grade, rank or rating; (2) physical readiness/fitness tests, i.e., whether the member's disability prohibits him or her from taking all or part of physical readiness/fitness tests; (3) deployability, i.e., whether the member's disability prevents him or her from being deployed; and (4) special qualifications, i.e., whether the member's disability causes the loss of any specialized qualifications part of the service member's current duty.  *Id*. at § 3304.

A finding of fitness or unfitness should be supported by a preponderance of the evidence.  *Id*. at § 3306.  In some circumstances, performance evaluations are relevant evidence in determining whether a service member can perform the duties reasonably expected of him or her.  *Id*. at §§ 3205, 3303.

If the PEB and relevant medical providers determine the service member's conditions rendered him or her unfit to continue naval service or contributed to the unfitness, the service member may be assigned a disability rating.  *Id*. at §§ 3301–3304.

### Naval Review Boards

The U.S. Navy abides by a statutory framework to use administrative boards to adjudicate various petitions by

current or former service members.   10 U.S.C. §§ 1552, 1553, 1554, 1554a. Two naval review boards are: the Navy Discharge Review Board ("Discharge Review Board") (*id.* § 1553) and the Board for Correction of Naval Records ("Record Correction Board") (*id.* § 1552). The Discharge Review Board is tasked with reviewing the discharge or dismissal of former service members and reclassifying a discharge characterization where necessary. *See id.* § 1553(a); SECNAVINST 5420.174D. The Record Correction Board is tasked with "correct[ing] any military record" when "necessary to correct an error or remove an injustice." *See* 10 U.S.C. § 1552(a)(1).

"Where a service member has not been considered or has been rejected for disability retirement prior to leaving active service, the service member can pursue disability retirement before a [Record Correction B]oard." *LaBonte v. United States*, 43 F.4th 1357, 1361 n.4 (Fed. Cir. 2022) (*LaBonte II*) (citing *Chambers v. United States*, 417 F.3d 1218, 1225 (Fed. Cir. 2005)).

## Discharge Characterization

A former service member's discharge status can be determinative of eligibility for benefits.[2]   Every service member is assigned a status—Honorable, Dishonorable, or an intermediate status (e.g., general or other than honorable)—upon discharge.

In the Navy, there are two categories of separations (also referred to as discharges) for enlisted service

---

[2]    Discharge characterization impacts a former service member's eligibility for a variety of significant benefits, including VA health care, VA disability payments, education under the G.I. Bill, and the VA home loan program. *See, e.g.*, 38 U.S.C. § 5303; 38 C.F.R. § 3.12; *Garvey v. Wilkie*, 972 F.3d 1333, 1336–37 (Fed. Cir. 2020).

members: administrative and punitive.  There are three types of administrative discharges: Honorable, Under Honorable Conditions (also termed General Discharge), and Under Other Than Honorable Conditions.  32 C.F.R. § 724.109.  A discharge "Under Honorable Conditions (also termed General)" is "contingent upon military behavior and performance of duty which is not sufficiently meritorious to warrant an Honorable Discharge."  *Id.* at § 724.109(a)(2).  There are also two types of punitive discharges: Bad Conduct and Dishonorable.  *Id.* at § 724.111.

"Liberal Consideration" Policy

On September 3, 2014, the Secretary of Defense issued guidance to the various military branches' Record Correction Boards directing "liberal consideration" for requests for discharge upgrade where the service member suffered from Post-Traumatic Stress Disorder ("PTSD") or related mental conditions.  Memorandum from Secretary of Defense Charles Hagel to Secretaries of the Military Departments (Sept. 3, 2014).[3]  Under this guidance, a service member suffering from mental health issues could present

---

[3]    Historical context preceding this liberal consideration policy is worthy of note.  A 1980 report, surveying decades of military discharges across services, determined that "[d]ifferent philosophies and practices among the services for imposing and upgrading discharges have led to wide disparities, which erode the integrity of the system." General Accounting Office, FPCD-80-13, *Military Discharge Policies and Practices Result in Wide Disparities: Congressional Review Is Needed*, at Foreword (1980).  In fact, "[m]any of those receiving less than honorable discharges are the ones who can afford it the least—the less educated and minorities—who are already at a competitive disadvantage in the labor market."  *Id.* at 50.  In light of these disparities, Congress sought for a standardized basis for discharge characterizations.  *See id.* at 92.

evidence to mitigate a finding of misconduct, if the evidence existed at the time of discharge and might have mitigated the misconduct. *See* SECNAV M-5420.1. In such instances, the military board assessing the characterization of discharge must afford the service member liberal consideration. J.A. 1476–78. "[T]his liberal consideration applies not only to upgrades to the character of a discharge, but also to requests for changes to the narrative reason for separation . . . ." *LaBonte II*, 43 F.4th at 1374. Changes to the narrative reason for separation can be granted on equity, injustice, or clemency grounds. *Id.* (citing Memorandum from Under Secretary of Defense Robert Wilkie to Secretaries of the Military Departments (July 25, 2018)).

On December 12, 2017, the liberal consideration standard was codified in 10 U.S.C. § 1552(h) to require "review [of] the claim with liberal consideration to the claimant that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the claimant's discharge or dismissal." Its effect is retroactive. *Doyon v. United States*, 58 F.4th 1235, 1245 (Fed. Cir. 2023) (rejecting argument that "§ 1552(h) cannot be retroactively applied to [Mr. Doyon's] application").

## Factual Background

Mr. Kelly served as a Second Class diver with a E4 rank in the United States Navy. He served from November 12, 2008, to December 20, 2013, during which time he received numerous accolades. For example, after Mr. Kelly was deployed in Haiti, he received an award of the Navy and Marine Corps Achievement medal and Humanitarian Service medal for meritorious service. He also participated in salvage operations off the coasts of Corpus Christi, Texas and Cherry Point, South Carolina. When he was first deployed to the Persian Gulf, Mr. Kelly participated in 41 anti-terrorism force protection inspection dives. His evaluation for that deployment stated that he was "devoted

and [a] tireless performer—[who] ensures mission accomplishment." J.A. 1375; J.A. 1165. Mr. Kelly's second deployment to the Persian Gulf resulted in 103 dives in a ten-month period, and an evaluation stating that he was an "effective team member with job accomplishment as a top priority" and that he had "excellent performance" such that he was "recommended for advancement and retention." J.A. 1375.

The type of diving performed by Mr. Kelly is extremely hazardous both because it requires descending into the ocean at any depth and working in hostile environments. Navy divers are therefore at risk of numerous injuries, including decompression sickness. J.A. 1374. Mr. Kelly suffered various injuries as a result of his dives. J.A. 1372.

In 2010, Mr. Kelly experienced a head trauma after striking his head during a dive. During a 2012 dive mission in Nova Scotia, Mr. Kelly's diving partner was trapped at 130 feet, so Mr. Kelly climbed 120 feet to the surface to retrieve a device to free the trapped diver. Mr. Kelly then descended the 130 feet and successfully freed his diving partner. This rescue, however, meant Mr. Kelly was below the surface for an excessive amount of time. As a result, Mr. Kelly lost consciousness and suffered from hypoxia—a condition in which the body is deprived adequate oxygen—and type-2 decompression. He received 6 hours of hyperbaric chamber treatment afterward.

Following these events, Mr. Kelly reportedly began experiencing emotional and behavioral changes. At the end of 2012, Mr. Kelly was transferred to the Naval Academy. In early 2013, Mr. Kelly was counselled for an unauthorized absence and substandard appearance. During this period, he was diagnosed with an adjustment disorder, depressed mood, and anxiety. Between March and July 2013, Mr. Kelly was cited for incidents and/or arrests for reckless driving, negligent driving, driving while intoxicated, theft (related to an unpaid restaurant bill),

disorderly conduct, and resisting arrest.  During this pe-
riod, he was also dealing with marital problems.

Following these incidents, the Navy removed Mr.
Kelly's Second Class Navy Diver classification and as-
signed him the duties of a maintenance technician.

## Procedural Background

On December 6, 2013, the Navy notified Mr. Kelly that
it had commenced an administrative separation against
him for commission of a serious offense resulting from his
disorderly conduct and resisting arrest.  On December 20,
2013, Mr. Kelly was administratively separated and dis-
charged with a characterization of Under Honorable Con-
ditions (general).  The narrative reason for Mr. Kelly's
separation recited "misconduct" for commission of a "seri-
ous offense."  J.A. 1242.

On February 3, 2015, Mr. Kelly requested that, under
the "liberal consideration" policy, the Discharge Review
Board upgrade his discharge characterization and dispense
of the misconduct-related reason for separation.  Mr. Kelly
specifically requested a discharge upgrade from an "under
honorable conditions (general)" to an "honorable" charac-
terization.

On October 14, 2015, the Discharge Review Board
granted Mr. Kelly's request for relief for equitable reasons
under the "liberal consideration" policy and noted that it
found no procedural error in his initial misconduct-related
separation.  J.A. 1028–31.  Thereafter, Mr. Kelly's dis-
charge characterization was honorable, and the reason for
his separation was "[s]ecretarial [a]uthority."  J.A. 1170.
Misconduct was no longer associated with Mr. Kelly's dis-
charge status.

On December 20, 2016, Mr. Kelly requested that the
Record Correction Board correct his military records to re-
flect disability retirement under 10 U.S.C. § 1201.  In sup-
port, he cited the Discharge Review Board's decision to

upgrade his characterization to a fully honorable discharge and his VA disability rating.[4]

On July 19, 2017, the Record Correction Board requested the Director of the Navy Council of Review Boards to provide comments and recommendations on Mr. Kelly's request. In response, an advisor of the Senior Medical Officer issued an advisory opinion. The medical advisor stated that the evidence supported that Mr. Kelly was fit to perform his duties at the time of his separation and that his misconduct did not result from "a legal[ly] exculpating level of psychological impairment incident to a potentially compensable psychiatric condition." J.A. 1130. The advisor also opined that if Mr. Kelly had been referred to the Evaluation System, Mr. Kelly would have likely still been found fit to perform his duties.

On December 12, 2017, Mr. Kelly challenged the advisory opinion. He argued that he suffered from cognitive and emotional impairment and PTSD that "are more likely than not" attributable to his service injuries. He also argued that, under SECNAVINST 1850.4E, he should have received a referral to the Evaluation System instead of being administratively separated.

On February 5, 2018, the Record Correction Board denied Mr. Kelly's request, finding that no error or injustice warranted correction to his record. First, the Record Correction Board "found objective evidence in [Mr. Kelly's]

---

[4] While separately seeking VA disability benefits, Mr. Kelly received an initial VA Rating Decision in 2014, which awarded him a 40% disability rating for cognitive deficits, 30% for major depressive disorder, and 10% for tinnitus. These rating percentages were later increased "to 50% and then 70% in Jul[y] 2017." To receive these rating percentages, the disabilities themselves had to have been connected to his service. *See* 38 U.S.C. § 1110.

military record that convinced [the Record Correction Board] that [Mr. Kelly was] able to perform the duties of [his] office, grade, rank or rating despite the existence of [his] diagnosed disabilities." J.A. 1006. In coming to this conclusion, the Record Correction Board "relied on the last two performance evaluations from 2013 which showed [Mr. Kelly] met acceptable performance standards from 13 May 2013 through [his] discharge on 20 December 2013." *Id.*

The Record Correction Board agreed with the findings made by the Discharge Review Board that Mr. Kelly had been "properly processed and discharged [for his] misconduct." *Id.* The Record Correction Board also "found no evidence that supported an argument [that Mr. Kelly was] not criminally responsible for [his] misconduct" or evidence "to indicate any mental incompetence." *Id.* "This led the [Record Correction Board] to conclude, even if evidence of unfitness for continued naval service existed, [Mr. Kelly] would have been ineligible for disability processing since [his] misconduct processing would have taken precedence over a referral to the [Evaluation System]." *Id.*

Mr. Kelly appealed the Record Correction Board's decision to the Court of Federal Claims. Mr. Kelly and the government cross-moved for judgment on the administrative record. The Court of Federal Claims granted the government's motion on the merits. *Kelly v. United States*, 157 Fed. Cl. 114, 124–35 (2021). In doing so, it reached two alternative decisions. First, the Court of Federal Claims found that the Record Correction Board's decision concerning Mr. Kelly's fitness to perform his duties was unsupported by substantial evidence. *Id.* at 124–30. The Court of Federal Claims determined that remand was appropriate so that the Record Correction Board could consider whether Mr. Kelly was able to reasonably perform common duties expected of his office, grade, rank or rating. *Id.* at 128. In its alternative finding, however, the Court of Federal Claims reasoned that remand was unnecessary because Mr. Kelly could not under any circumstance be

referred to the Evaluation System (and, hence, be eligible for disability retirement pay) because misconduct was cited as the cause for his separation from service. *See id.* at 130–33. The Court of Federal Claims also concluded that Mr. Kelly was not deprived due process by the Record Correction Board's decision because there is no recognized property interest for military disability retirement under 10 U.S.C. § 1201. *Id.* at 133–35.

Mr. Kelly timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

We review legal determinations by the Court of Federal Claims, including judgment on the administrative record, *de novo*. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). We apply the same standard applied by the Court of Federal Claims, and do not disturb a determination of the Record Correction Board's unless it was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Id.* An agency's decision is arbitrary and capricious when the agency decision-maker "entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "We may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Mr. Kelly argues on appeal that the Record Correction Board erred in its denial to correct his military records to reflect military disability retirement under 10 U.S.C. § 1201. Appellant Br. 10. He also argues that the Record Correction Board's decision violated his Due Process rights

14    KELLY v. US

when it refused to grant him a post-separation hearing. Appellant Br. 10, 17.  We address each argument in turn.

### Denial to Correct Records

The Record Correction Board denied Mr. Kelly's request for a correction in his military records on two separate grounds.  The Record Correction Board found that Mr. Kelly was fit to perform his duties at the time of separation and that, even if he were unfit, his separation for misconduct precluded a referral to the Evaluation System.  J.A. 39.  For the following reasons, we hold that the Record Correction Board's decision to deny Mr. Kelly's request to correct his military record to reflect military disability retirement pay under 10 U.S.C. § 1201 was arbitrary and capricious and unsupported by substantial evidence.

### Mr. Kelly's Fitness to Perform Duties

We first address the Record Correction Board's decision that Mr. Kelly was fit to perform his duties at the time he was separated from service.  In reaching its determination, the Record Correction Board relied on Mr. Kelly's last two performance evaluations conducted in 2013 and found them conclusive on the question of Mr. Kelly's fitness.  *See* J.A. 39.  The Court of Federal Claims found that basing the fitness determination solely on Mr. Kelly's final two performance evaluations produced a deficient and erroneous result.  *Kelly*, 157 Fed. Cl. at 126–27.  We agree.

Mr. Kelly's "penultimate performance evaluation—covering the period of March 2013 to May 2013—indicate[d] that [he] was at the ND2 rating primarily performing the duties of a Second Class Navy Diver, which included the 'operation, maintenance, and repair of diving life support equipment.'"  *Kelly*, 157 Fed. Cl. at 126.  The evaluation explains that Mr. Kelly "met the standards in all categories of performance traits except for 'military bearing/character,' in which he fell below standards due to his drunken operation of a vehicle," but the evaluation "did not include

comments on performance providing any further detail about [Mr. Kelly's] duties during this period." *Id.* Mr. Kelly's final evaluation—covering May 2013 to December 2013—indicated that he was at a different rating, ND3, "primarily performing the duties of a Maintenance Technician"—not a Second Class Navy Diver. *Id.* Again, Mr. Kelly "met the standards in all categories of performance traits except for 'military bearing/character,'" and "no further information about his duties during this period was provided in the comment section." *Id.*

We conclude that the Record Correction Board failed to evaluate all relevant criteria under SECNAVINST 1850.4E § 3304 (common military tasks, physical readiness/fitness tests, deployability, special qualifications). The Court of Federal Claims correctly found that the two performance evaluations failed to sufficiently address whether Mr. Kelly was able to perform the common duties of a Second-Class Navy Diver at the E4 grade. *Id.* at 127. "[C]ommon duties of a Navy diver include descending into the ocean at any depth and working in, among other conditions, hostile environments that include cold muddy water where tasks can be completed only by feel." *Id.* (citations and internal quotations omitted). The Court of Federal Claims determined "that [whether Mr. Kelly] was maintaining diving equipment . . . does not necessarily equate to a finding that he was fit to perform work that a member in his office, grade, rank, or rating would reasonably be expected to perform." *Id.* (citations and internal quotations marks omitted). The Court of Federal Claims further determined that "[t]he deficiencies in the [Record Correction] Board's consideration of [Mr. Kelly]'s common military tasks are more pronounced given the extra importance it accorded to his final performance evaluation," which was completed at a time when he was "performing duties of a maintenance technician—not a Second Class Navy Diver." *Id.*

The Court of Federal Claims concluded that the Record Correction Board failed to consider "whether [Mr. Kelly]'s medical condition affected his deployability or special qualifications as a Navy Diver" as required by SECNAVINST 1850.4E § 3304. *Id.* at 129–30. Based on the foregoing, the Court of Federal Claims found that "[r]emand would be appropriate for the [Record Correction Board] in the first instance to reconsider [Mr. Kelly's] performance evaluation reports and further explain its determination with respect to [his] common military tasks." *Id.* at 128; *see also id.* at 130.

We agree with the Court of Federal Claims' decision to the extent it found that the Record Correction Board failed to consider all relevant criteria enumerated in SECNAVINST 1850.4E § 3304. The full evaluation of all the criteria set out in SECNAVINST 1850.4E § 3304 is important, including because a decision under that section affects other related determinations, such as the establishment of a final disability rating under 10 U.S.C. § 1216a(b) (accounting for all medical conditions that render a member unfit to perform the duties "of the member's office, grade, rank, or rating"), and under 10 U.S.C. §§ 1201–1203. Consequently, we conclude that the Record Correction Board's decision was arbitrary and capricious and not supported by substantial evidence.

We also agree with the Court of Federal Claims that remand is necessary for the Record Correction Board to determine whether Mr. Kelly's medical condition affected his deployability or special qualifications as a Navy Diver as required by SECNAVINST 1850.4E § 3304. This court has previously found that remand is necessary where the decision under review fails to address required findings. *See Byron v. Shinseki*, 670 F.3d 1202, 1206 (Fed. Cir. 2012) (holding that "[w]hen there are facts that remain to be found in the first instance, a remand is the proper course"). On this basis, we agree with the Court of Federal Claims' decision to remand to the Record Correction Board to make

the required findings and consider all related arguments of the parties.

### Mr. Kelly's Separation for Misconduct

We next turn to the Court of Federal Claims' alternative finding that remand was ultimately unnecessary because Mr. Kelly's separation for "misconduct" precluded him from referral to the Evaluation System. *Kelly*, 157 Fed. Cl. at 124–30. Mr. Kelly argues that the Record Correction Board never explained why he was precluded from a record correction when his records show that he was granted a fully Honorable discharge and that "misconduct" was removed as the reason for separation. Appellant Br. 10.

The government appears to argue that the Record Correction Board is entitled to ignore the updates to Mr. Kelly's record. *See* Appellee Br. 19, 25, 38–43. Even assuming that the Record Correction Board did not ignore the updated record, it failed to explain its rationale that an upgrade in discharge characterization has no legal effect in future related determinations reached by the Record Correction Board. The decision is silent as to any analysis concerning the legal impact the upgrade in discharge coupled with the removal of misconduct had on eligibility for an Evaluation System referral. Instead, the Record Correction Board focused on SECNAVINST 1850.4E's policy that "misconduct processing would have taken precedence over a referral to the Evaluation System." *See* J.A. 38–40.

We acknowledged that upgrade changes can be relevant in determining eligibility for military disability retirement processing in *LaBonte II*, 43 F.4th at 1368. The Court of Federal Claims in that case addressed the question presented in this appeal: whether a discharge upgrade affects the application of a military regulation that is triggered under certain separation circumstances. *LaBonte v. United States*, 150 Fed. Cl. 552, 561 (2020) (*LaBonte I*) (analyzing Army Regulation 635.40). Mr. Robert J. LaBonte pleaded

guilty in a court-martial proceeding to a charge of desertion and was separated from the Army with a Bad Conduct Discharge. *LaBonte I*, 150 Fed. Cl. at 555. He was later granted clemency and received an upgraded discharge characterization to "General, Under Honorable Conditions" after it was determined that he suffered from service-related PTSD and traumatic brain injury (TBI). *Id.* Mr. LaBonte requested that the Army Record Correction Board correct his records to reflect retroactive military disability retirement pay. *Id.* at 556. The Army Record Correction Board denied the request. *Id.*

Mr. LaBonte appealed the Army Record Correction Board's denial to the Court of Federal Claims. *Id.* at 555. The government moved to dismiss on two grounds: (1) that Mr. LaBonte was not eligible for disability processing under Army Regulation 635-40, and (2) that the Army Correction Board is without authority under 10 U.S.C. § 1552(f)[5] to correct Mr. LaBonte's DD-214 Form to reflect military disability retirement. *Id.* at 559.

Army Regulation 635-40—similar to SECNAVINST 1850.4E—barred referral to the Evaluation System when certain separation circumstances linked to delinquent or bad behavior existed. Specifically, Army Regulation 635-40 provided that a solider "may not be referred for, or continue, disability processing if under sentence of dismissal or punitive discharge." *LaBonte II*, 43 F.4th at 1364 (quoting Army Regulation 635-40 at ¶ 4-2).

---

[5]    Under 10 U.S.C. § 1552(a)(1), "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." Section 1552(f) relates to corrections that involve "records of courts-martial and related administrative records pertaining to court-martial cases."

The Court of Federal Claims determined that a discharge upgrade from "punitive" to "general, under honorable conditions" meant that Mr. LaBonte was no longer barred from disability-retirement processing under Army Regulation 635-40. *LaBonte I*, 150 Fed. Cl. at 560–61. The Court of Federal Claims dismissed the case, however, because it agreed that the Army Record Correction Board lacked statutory authority to grant Mr. LaBonte relief— i.e., correct his DD-214 Form—under 10 U.S.C. § 1552(f). *Id.* at 561–64. Mr. LaBonte appealed the Court of Federal Claims' dismissal to this court. *LaBonte II*, 43 F.4th at 1360.

Although the discharge upgrade determination was not on appeal before this court, we found in *LaBonte II* no error in the Court of Federal Claims' ruling on that issue. *Id.* at 1368 ("discern[ing] no error" in the Court of Federal Claims' determination that because the "punitive discharge—Bad Conduct Discharge—was no longer reflected in his official record, AR 635-40, in effect at the time of his discharge, did not bar him from disability-retirement processing.").

Thus, at a minimum, *LaBonte*[6] is instructive on the issue in this appeal. *See Co-Steel Raritan, Inc. v. Int'l Trade Comm'n*, 357 F.3d 1294, 1307 (Fed. Cir. 2004) ("[D]icta, which describes statements made by a court that are 'unnecessary to the decision in the case, and therefore not precedential (though [they] may be considered persuasive).'" (quoting BLACK'S LAW DICTIONARY (7th ed. 1999))); *see also In re Lalu*, 747 F.2d 703, 706 (Fed. Cir. 1984) (finding two cases about a different legal issue and with different facts contained dicta that "[wa]s helpful as a guide"). *LaBonte* suggests that upgrade changes are a relevant

---

6    This opinion refers to "*LaBonte*" when referring to "*LaBonte I*" and "*LaBonte II*" collectively.

consideration in determining eligibility for military disability retirement processing.

Like the service member in *LaBonte*, Mr. Kelly received an upgraded discharge characterization. In fact, Mr. Kelly's upgrades changes were significantly more favorable than those of Mr. LaBonte. Mr. Kelly's discharge characterization was upgraded to "Honorable" and his reason of separation changed from "misconduct (serious offense)" to "secretarial authority." Also, Mr. Kelly was not seeking correction following any court-martial proceedings or court-martial convictions.

We see no reason, nor did we receive arguments, as to why the circumstances surrounding Mr. Kelly's request should be treated fundamentally differently than those surrounding Mr. LaBonte's request in *LaBonte*. Both the Navy and the Army regulations are based on the same statutory framework and both servicemen permissively received changes to their discharge characterization and/or narrative reason for separation under the Liberal Consideration Policy.[7] Under that policy, Congress sought a standardized basis for discharge characterizations. *See supra* note 3. The policy sought to permit service members to

---

[7] The government argues that Mr. Kelly waived the argument that the liberal consideration policy applies here because he failed to explicitly raise it in his papers before the Record Correction Board. Appellee Br. 39. We disagree. Mr. Kelly sought liberal consideration in his effort to change his discharge characterization and narrative reason for separation. J.A. 1372; J.A. 1381. The Discharge Review Board applied the liberal consideration policy in granting Mr. Kelly his requested relief. Based on those changes, Mr. Kelly permissibly sought a record correction to reflect his potential qualification for military disability retirement pay. We find no basis for imposing a waiver in this case.

present evidence mitigating a finding of misconduct where such evidence existed at the time of separation.

When the Record Correction Board reviewed Mr. Kelly's request for a correction to his military record, the record reflected that he was discharged with an Honorable characterization. Importantly, the narrative for the discharge did not (any longer) state that the reason for the discharge was due to misconduct. And there was mitigating evidence that Mr. Kelly's injuries incurred during service existed at the time of separation. Yet the Record Correction Board does not adequately discuss or explain why it continued to treat Mr. Kelly's record as containing a separation for misconduct.

We hold that the Record Correction Board's failure to review or evaluate the effect the upgrade change in Mr. Kelly's record had on his eligibility for military retirement disability pay was arbitrary and capricious. When a military correction board fails to evaluate the full and complete record before it, as is the case here, it is acting in violation of its statutory mandate to correct records when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Such a violation is arbitrary and capricious because it amounts to "offer[ing] an explanation for the agency's decision that runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43.

The Record Correction Board's decision is also inconsistent with how the Veteran's Administration treats changes in discharge characterization. *See* 38 C.F.R. § 3.12. Under the VA framework, provided all other applicable conditions for VA benefits are met, a change in discharge characterization can lead to veteran disability benefits. For example, "[a]n honorable discharge or discharge under honorable conditions [later] issued through a board for correction of records . . . is final and conclusive on the [VA]. The action of the board sets aside any prior bar to benefits imposed." *Id*. § 3.12(e); *see also id*. § 3.12(h).

To be clear, VA regulations and VA decisions concerning disability are not binding on matters involving military disability retirement pay. But we see no principled reason for such disparate treatment in how the Navy treats changes in discharge characterization from how the VA treats those same type of changes. Indeed, the liberal consideration policy was instituted to eliminate such differences. *See* General Accounting Office, FPCD-80-13, *Military Discharge Policies and Practices Result in Wide Disparities: Congressional Review Is Needed*, at Foreword (1980).

We hold that the Record Correction Board's decision rejecting Mr. Kelly's request to correct his record was arbitrary and capricious.[8] We vacate and remand for further proceedings consistent with this opinion.

### Due Process

Since further proceedings to determine Mr. Kelly's fitness are required, we think it useful and appropriate to consider Mr. Kelly's challenge to the Court of Federal Claims' decision that Mr. Kelly has no recognized property interest for military disability retirement under 10 U.S.C. § 1201, and therefore was not entitled to a post-separation hearing. Appellant Br. 10.[9]

---

[8]    Mr. Kelly also argues that the Record Correction Board should have retroactively applied a 2016 Navy policy, which allowed service members who were "being processed for any type of involuntary administrative separation, to be referred to the [Evaluation System]," to his 2017 claim. J.A. 28; Appellant Br. 14. We need not reach this issue where we find the Record Correction Board's disregard of Mr. Kelly's record was arbitrary and capricious.

[9]    The Due Process Clause of the U.S. Constitution guarantees that an individual will not be deprived of life,

Mr. Kelly argues that the requisite interest exists for military disability benefits for the same reasons we held such an interest exists for veteran disability benefits in *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). Appellant Br. 17. The Court of Federal Claims and the government distinguish *Cushman* because it "involved veterans benefits from the Department of Veteran Affairs, which are based on a wholly distinct statutory scheme." Appellee Br. 44; *Kelly*, 157 Fed. Cl. at 134. We agree with Mr. Kelly.

In *Cushman*, we concluded that entitlement to veteran disability benefits under 38 U.S.C. § 1110 confers a property interest protected by the Due Process Clause. *Cushman*, 576 F.3d at 1296–98. We held that due process attaches to benefits that are nondiscretionary and statutorily mandated. *Id.* at 1297–98. As to veteran disability benefits, we noted that "entitlement to veteran's benefits arises from a source that is independent from the [VA] proceedings themselves . . . . Th[e] statutes provide an absolute right of benefits for qualified individuals." *Id.*

Military disability retirement benefits under 10 U.S.C. § 1201 are nondiscretionary and statutorily mandated. The language of the statute reads: "Upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . the Secretary may retire the member, with retired pay." 10 U.S.C. § 1201(a). This court has held that the statute, despite employing the word "may," is not discretionary. *Sawyer v. United States*,

---

liberty, or property without due process of law. U.S. CONST. amend. V. "To raise a due process question, the claimant must demonstrate a property interest entitled to such protections." *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009).

930 F.2d 1577, 1580 (1991) ("The word 'may' in section 1201 does not convey discretion whether or not to pay . . . . [The service member] would [be] statutorily . . . entitled to money, unless the disability is not in the line of duty."). And like the statutes providing veteran disability benefits, 10 U.S.C. § 1201 provides a right to military disability retirement benefits to qualified individuals. Thus, if a service member is eligible under 10 U.S.C. § 1201, the service member's military disability retirement benefits are nondiscretionary and statutorily mandated. *See id.*

Because § 1201 military disability retirement benefits are nondiscretionary and statutorily mandated, they confer a property interest protected by the Due Process Clause. We reject the Court of Federal Claims' determination that Mr. Kelly lacked a recognized property interest in his military disability requirement pay.

Mr. Kelly claims that he was denied due process rights when the government refused his request for a post-separation hearing. Appellant Br. 10, 17. We remand for the Record Correction Board to conduct a new evaluation of fitness at which Mr. Kelly will be free to reassert his request for a post-separation hearing, if necessary.

## CONCLUSION

We agree with the Court of Federal Claims' finding that the Record Correction Board's fitness determination was arbitrary and capricious and unsupported by substantial evidence. We vacate the Court of Federal Claims' determination that the Record Correction Board properly denied Mr. Kelly's request to correct his record for military disability retirement because Mr. Kelly's separation for misconduct precluded his referral to the Evaluation System. In so doing, we reject the Court of Federal Claims' conclusion that Mr. Kelly lacked a recognized property interest in his military disability retirement benefits. We remand for the Record Correction Board to explain, in the first instance, its determination in this case in view of Mr.

Kelly's change in discharge characterization and narrative reason for separation, to determine Mr. Kelly's fitness under all relevant considerations set out in SECNAVINST 1850.4E § 3304, and to address Mr. Kelly's eligibility under the relevant military disability retirement pay statute, 10 U.S.C. §§ 1201, 1203.

## VACATED AND REMANDED

### COSTS

No costs.